(No. 33822.—

ALFRED R. DICK *et al.*, Appellants, *vs.* ROY C. ROBERTS *et al.*, Appellees.

*Opinion filed March 22, 1956.*

C. G. Colburn, of Virginia, for appellants.

Milton McClure, of Beardstown, for appellees.

Robert A. Stuart, of Springfield, for Illinois Association of Park Districts, *amicus curiae*.

Mr. Justice Daily delivered the opinion of the court:

The Beardstown Community Park District, consisting of the city of Beardstown and the surrounding farm community, was organized in July, 1954, under the provisions of our Park District Code (Ill. Rev. Stat. 1953, chap. 105, pars. 1—1 to 12—2.) Immediately thereafter, meetings were held and plans made for the building of a community swimming pool to be paid for by the issuance of general obligation bonds, and at a special election on September 25, 1954, the voters of the district, by almost a two-to-one margin, voiced their approval of this project by affirmatively answering the following proposition: "Shall bonds of Beardstown Community Park District, Cass County, Illinois, to the amount of One Hundred Ten Thousand

Dollars ($110,000) be issued for the purpose of acquiring lands for a park and building, maintaining, improving and protecting the same including building of a swimming pool thereon, and for the payment of expenses incident thereto?"

However, certain taxpayers of the park district contended that the election had not been held in accordance with constitutional and statutory requirements, and for that reason, on October 11, 1954, a complaint was filed by them in the circuit court of Cass County to enjoin the park commissioners from issuing the bonds in question and to restrain the county clerk of Cass County from extending any taxes for the payment of this indebtedness. A temporary injunction was thereafter issued, but upon hearing of this cause, the injunction was dissolved and the case dismissed as without merit. Direct appeal has now been taken to this court.

To determine the legality of the proceedings in the present case, we must first look to the powers that are granted to such districts by the applicable provisions of the Park District Code. Article eight, section 8—10, (Ill. Rev. Stat. 1953, chap. 105, par. 8—10,) provides: "All park districts shall have power to * * * construct, equip, and maintain * * * indoor and outdoor swimming pools * * * and the power to make and enforce reasonable rules, regulations, and charges therefor." Section 6—2 of article six (Ill. Rev. Stat. 1953, chap. 105, par. 6—2,) states: "For the payment of land condemned or purchased for parks or boulevards, for the building, maintaining, improving and protecting of the same and for the payment of the expenses incident thereto, or for the acquisition of real estate and lands to be used as a site for an armory, any park district is authorized to issue the bonds of such park district and pledge its property and credit therefor to an amount including existing indebtedness of such district so that the aggregate indebtedness of such district shall not exceed two and one-half (2½) per centum of the value

of the taxable property therein * * *." Section 6—4 of the same article, in providing for a referendum in such cases, specifies that the ballot used shall be in substantially the following form:

| Shall bonds of the............ Park District (naming it) to the amount of.............Dollars ($..........) be issued for the purpose of .................? (Here insert any one or more of the purposes authorized in Section 6—2 hereof) | YES | |
| | NO | |

Also of special interest is article nine, section 9—1 (Ill. Rev. Stat. 1953, chap. 105, par. 9—1,) which contains the following provision: "Any park district has the power * * * to construct and operate an outdoor or indoor swimming pool, borrow money, and as evidence thereof to issue its bonds, payable solely from the revenue derived from the operation thereof."

Plaintiffs' counsel has admitted, in oral argument to this court, that were it not for section 9—1 the powers contained in section 6—2 are broad enough to include park pool construction. However, relying upon the maxim of *expressio unius est exclusio alterius*, the plaintiffs contend that by expressly mentioning swimming pools in section 9—1, our legislature thereby inferred that swimming pools were not to be included in the general provisions of section 6—2. Therefore, they argue, the park district was without authority to finance the building of a swimming pool except by the sale of revenue bonds and since the election in question was concerned with general obligation rather than revenue bonds, the entire bond issue was null and void. The plaintiffs also contend that the proceedings were defective because no land had in fact been condemned or purchased by the district prior to the time of the election and because the ballot, in expressly referring to the

building of a swimming pool, contained a purpose not authorized by statute and a double proposition which was contrary to article 2, section 18 of our constitution. Thus, we must now decide the following questions: (1) Does article six, section 6—2 of the Park District Code authorize the issuance of general obligation bonds for the purpose of building a swimming pool, and (2) if so, were all statutory and constitutional requirements substantially complied with in the present case.

The principle of exclusion which is relied upon by the plaintiffs is not a rule of law but is a mere rule of statutory construction which is used by the courts in arriving at the real intention of the legislature where such intention is not clearly manifest from the language itself. (*Illinois Central Railroad Co.* v. *Franklin County,* 387 Ill. 301; *The Chicago and Northwestern Railway Co.* v. *City of Chicago,* 148 Ill. 141.) If, after considering the necessity or reason for the enactment, the language used, and the object desired, the true legislative intent can be ascertained, then no reason remains for resorting to such a construction aid. *People ex rel. Wilson* v. *Illinois Central Railroad Co.* 396 Ill. 510; *Illinois Central Railroad Co.* v. *Franklin County,* 387 Ill. 301; *Jones* v. *Pebler,* 371 Ill. 309; *Warner* v. *King,* 267 Ill. 82.

Under the present statute, the legislature has afforded a means by which a park district may pledge its entire credit for the purpose of building, maintaining, improving, and protecting its property and carrying out the powers which have been granted to it, subject, however, to the referendum requirement and debt limitation as is therein specified. The lawmakers have also provided that in order to construct and operate a swimming pool, a park district may issue bonds which are payable solely from the revenue derived therefrom without the necessity of submitting the question to referendum, unless such is demanded by the voters, and without regard to the present debt limitation.

It can hardly be said that these provisions either conflict or that their meanings are so obscure as to justify the use of the maxim above-mentioned. Rather, it is clear that the legislature recognized not only the great benefits which may be derived from a public swimming area but also the enormous costs which such a project might entail, and as a result of this foresight, has provided a means by which such recreational facilities may be acquired and enjoyed by districts which could not, because of their debt limitation, pledge their general credit for this purpose. In so providing for the sale of revenue bonds, the legislature has also made it possible for a district to undertake other projects which *must* be financed by general bonds and which might otherwise have to be postponed until the park pool indebtedness had been retired. It must also be remembered that in some localities, the revenue derived from swimming pool operations would be insufficient to retire the construction indebtedness and the only practical way to acquire such facilities is through the sale of general obligation bonds. We do not believe that it was the legislature's intent to deprive these areas of such an important park activity.

This view receives considerable support from the statute itself. Article one, section 1—2(g) (Ill. Rev. Stat. 1953, chap. 105, par. 1—2) reads as follows: "The provisions of this code shall be cumulative in effect and if any provision is inconsistent with another provision of this code * * * it shall be considered as an alternative or additional power and not as a limitation upon any other power granted to or possessed by any park district." According to Black's Law Dictionary (3d edition, 1933) the word "cumulative" signifies "that two things are to be added together, instead of one being a repetition or in substitution of the other." Thus, by express language, the legislature has indicated that the powers granted by section 9—1 are additional to those contained in section 6—2, and cannot in any manner, be considered as conflicting or exclusive.

(*Patteson* v. *City of Peoria*, 386 Ill. 460; *Chicago and Northwestern Railway Co.* v. *City of Chicago*, 148 Ill. 141.) It is our opinion that article six, section 6—2 of the Park District Code does authorize the issuance of general obligation bonds for the purpose of building a swimming pool.

We must next consider the legality of the proceedings in the present case. The code provides that general obligations bonds may be issued "For the payment of land condemned or purchased." The plaintiffs have interpreted this section to mean that the land must be purchased or condemned before the proposition is submitted to the voters for their approval. We cannot agree with this strained interpretation. A careful reading of the language of section 6—2 and that contained in section 6—4, discloses that the words "condemned or purchased" refer only to the time of payment and not to the time that the referendum is held. Were it otherwise, a district would be forced to shoulder legal and financial burdens without knowing whether the project itself will be approved. Such a dilemma is not contemplated by our statute.

Neither do we believe that the form of ballot used was defective. The proposition stated that the bonds were to be issued for the purpose of *acquiring lands* and building, maintaining, improving, and protecting the same *including building of a swimming pool*. It is true that the purposes authorized by section 6—2 refer only to "land condemned or purchased" rather than to "acquiring lands" and do not mention the building of a swimming pool. Yet, it is not every deviation from the prescribed form that renders a ballot defective but rather, as section 6—4 expressly states, *substantial* compliance therewith is sufficient. The real test is whether the voter has been given as clear an alternative as he would have had if the statutory form had been identically followed, and if so, the presence of additional information will in no way affect the ballot's legality. (*Peo-*

222

*ple ex rel. Wilson* v. *Illinois Central Railroad Co.* 396 Ill. 510; *Knappenberger* v. *Hughes,* 377 Ill. 126; *People ex rel. Howard* v. *Chicago and Eastern Illinois Railroad Co.* 296 Ill. 246.) Here, the voters were not asked to decide two propositions by means of a single question. Instead, the only proposition presented was whether bonds should be issued for the purpose of acquiring lands for a park and improving the same. The fact that the voters were further informed as to the contemplated disposition of at least a part of these funds, cannot be said to have, in any way, restricted their freedom of choice, but, on the contrary, such information served to better apprise them of the facts at hand. It is our opinion that all statutory and constitutional requirements were substantially complied with in the present case. The decree of the circuit court of Cass County is, therefore, affirmed.

*Decree affirmed.*