(No. 35117.—)

HENRY SMITH, Appellant, *vs.* CALHOUN COMMUNITY UNIT SCHOOL DISTRICT No. 40 *et al.,* Appellees.

*Opinion filed March 20, 1959.*

JOHN F. GIBBONS, of Jerseyville, for appellant.

L. K. HUBBARD, State's Attorney, of Carrollton, and RALPH J. MOSES, State's Attorney, of Hardin, and J. CLARK ANDERSON, and PAUL R. DURR, both of Hardin, for appellees.

Mr. JUSTICE DAVIS delivered the opinion of the court:

This case involves the validity of the ballot used at an election which authorized the issuance of school bonds. The plaintiff, a taxpayer, brought suit in the circuit court of Calhoun County to enjoin the county clerks of Greene and Calhoun counties from extending the tax rate to provide for the payment of principal and interest on such bonds, in that the form of ballot used at the election was invalid. The circuit court entered a decree denying the injunction, and plaintiff appeals directly to this court, the case being

one relating to revenue. Ill. Rev. Stat. 1957, chap. 110, par. 75; *Schoon* v. *Board of Education,* 11 Ill.2d 91.

On March 11, 1958, the board of education of Community Unit School District No. 40, Calhoun and Greene Counties, duly adopted a resolution calling a special election for the purpose of submitting to the legal voters of the district a proposition to build and equip a new high school bulding, to build additional classrooms, and to issue school building bonds to the amount of $429,000 for such purposes. The resolution set forth the proposition to be voted upon, established precincts and polling places for the election, set forth the form of the ballot, the date of election and time of opening and closing the polls. A notice of special school election was duly published, and the election was held in conformity with the provisions of the resolution and notice.

Following the election, the board of education duly canvassed the returns, and by appropriate resolution found that the proposition was approved by a majority of the votes cast. Subsequently, the board adopted a resolution authorizing and directing the issuance of such bonds in the amount of $404,000, and providing for the levy of a tax for their payment. Certified copies of this resolution were filed in the offices of the county clerks of Calhoun and Greene counties. Thereafter, the plaintiff filed suit to enjoin the sale of the bonds and the extension of the required tax rate.

The proposition set forth in the original resolution of the board, and in the notice of special school election was as follows:

"Shall the Board of Education of Community Unit School District No. 40 Calhoun and Greene Counties, Illinois, be authorized to build and equip a new high school building on a site now owned by said District; and to build additional classrooms to the Kampsville School; and to issue school building bonds to the amount of Four Hun-

dred Twenty Nine Thousand Dollars ($429,000.00) for the above purposes; said bonds to mature on January 1, in each of the years and in the amounts, as follows:

| | | | |
|---|---|---|---|
| $ 5,000.00 | 1960 | $23,000.00 | 1969 |
| 11,000.00 | 1961 | 24,000.00 | 1970 |
| 12,000.00 | 1962 | 25,000.00 | 1971 |
| 17,000.00 | 1963 | 26,000.00 | 1972 |
| 18,000.00 | 1964 | 28,000.00 | 1973 |
| 19,000.00 | 1965 | 29,000.00 | 1974 |
| 20,000.00 | 1966 | 30,000.00 | 1975 |
| 21,000.00 | 1967 | 31,000.00 | 1976 |
| 22,000.00 | 1968 | 32,000.00 | 1977 |
| | | 36,000.00 | 1978 |

Bonds maturing in the years 1960-1969, both inclusive, to bear interest at the rate of Four and One-half Per centum (4½%) per annum; bonds maturing in the years 1970-1978, both inclusive, to bear interest at the rate of Four and Three-Quarters Per Centum (4¾%) per annum, payable semi-annually."

The language of the proposition on the official ballot used at the election was identical to the foregoing proposition except that the figures "$32,000.00....1977" were omitted from the schedule of maturity dates on the ballot. The sole question presented upon this appeal is the effect of this omission. It is undisputed that the statutory provisions governing such election were complied with in all other respects.

Section 5A—13 of the School Code (Ill. Rev. Stat. 1957, chap. 122, par. 5A—13,) entitled, "Public Measures —Ballots," provides in part:

"Whenever a public measure is submitted to be voted upon, the substance of such public measure shall be clearly indicated on the ballot and two spaces shall be left upon the right hand margin thereof, one for the votes favoring the public measure, to be designated by the word 'yes,' and one for the votes opposing the measure, to be designated

by the word 'no,' substantially in the following form:

| Shall (Here print the substance of the public measure.) | YES | |
|---|---|---|
| | NO | |

,,

The legislature has required that the substance of the public measure shall be printed on the ballot, and the use of this language eliminates the requirement that the public measure be set forth in *haec verba*. We know of no authority, and none has been cited, to indicate that the schedule of maturities of a school bond issue is an essential part of the substance of the public measure, which must be printed on the ballot. Cf. *Schoon* v. *Board of Education,* 11 Ill.2d 91; *Roll* v. *Carrollton Community Unit School Dist.* 3 Ill.2d 148.

We have frequently held that where a special statute prescribes the form of the ballot there must be a substantial compliance with the special statutory mandate or the election is void. (*People ex rel. Kramer* v. *Chicago, Rock Island and Pacific Railroad Co.* 6 Ill.2d 266; *People ex rel. Henry* v. *New York Central Railroad Lines,* 381 Ill. 490.) However, the School Code requires only that the substance of the public measure shall be printed on the ballot and the rule has been tempered by the qualification that not every deviation from the form of ballot prescribed by the applicable statute will render an election void. *People ex rel. Kramer* v. *Chicago, Rock Island and Pacific Railroad Co.* 6 Ill.2d 266; *Knappenberger* v. *Hughes,* 377 Ill. 126.

In this case, the notice of the election set forth the public measure in full, including the total amount of the proposed bond issue, the interest rate, the complete schedule of maturities, the number and boundaries of the precincts, the date of the election and the hours the polls would open and close. It gave the voter, in advance of the election, all

the information necessary for a complete understanding of every aspect of the proposition. We do not believe that the legislature intended, as a condition precedent to the validity of the election, that such detailed specifications be printed on the official ballot.

This view is sustained by the history of the school legislation with reference to the notice and ballot to be used in submitting public measures to the voters at a school election. Article 5A entitled "School Elections" was added to the School Code in 1951. Sections 5A—10 and 5A—13 changed the prior enactments respecting the ballot and notice to be used in school elections where public measures were submitted. Section 5A—10 (Ill. Rev. Stat. 1951, chap. 122, par. 5A—10,) required only that the notice of the election shall "contain the substance of the proposition to be voted upon," and section 5A—13 (Ill. Rev. Stat. 1951, chap. 122, par. 5A—13,) prescribed only that the ballot in connection with public measures "print the substance of the public measure." These sections have been subsequently amended in other respects without changing such provisions.

Prior to 1951, article 19 of the School Code contained the applicable provisions of the school law relative to debt limitation and bonds. Section 19—4 of the School Code, as adopted in 1945, (Ill. Rev. Stat. 1945, chap. 122, par. 19—4,) provided that the notice to be given at an election held for the purpose of borrowing money may be in the following form:

"NOTICE OF ELECTION

"Notice is hereby given that on......day of......1.., an election will be held at......school district No. ....in ......County, Illinois, for the purpose of voting 'for' or 'against' the proposition to issue bonds of district No..... to the amount of...... dollars due (here insert the times of payment, giving the amount falling due in each year, if the bonds mature at different days), which bonds are to bear interest at the rate of......per cent per annum,

payable ....annually. The polls will be opened at ......
o'clock....m., and closed at.....o'clock...m.

"Dated this ......day of......, 1....

A........... B..........., President
C........... D..........., Clerk."

The same provision was incorporated in section 198 of the School Law of 1909. (Laws of 1909, p. 397.) However, the legislature omitted from section 5A—10 any specific form of notice and the requirement that the notice specify "the times of payment, giving the amount falling due in each year, if the bonds mature at different days."

Prior to the adoption of the School Code, statutes pertaining to the issuance of bonds for educational purposes, for working cash fund purposes, for the payment of claims and orders issued for the wages of teachers, and for building school houses, or repairing or altering school houses by special charter school districts, contained separate provisions which prescribed the specific form of the ballot to be used. (Ill. Rev. Stat. 1943, chap. 122, pars. 327r, 327x, 327.7, 327.32, 327.39, 327.41, 327.48, 327.57, and 330.) None of these forms of ballot made reference to the times of payment or the amount or date of the maturities of the bonds to be issued. Section 4 of "An Act to authorize certain school districts to issue bonds for certain purposes," adopted May 10, 1901, which applied to school districts generally, provided for the giving of notice in connection with an election for the purpose of providing money to build or repair a school house by the issuance of bonds and required only that the votes at such election shall be by ballot. Ill. Rev. Stat. 1943, chap. 122, par. 325.

The School Code of 1945, with reference to certain districts, likewise required only that the vote on a proposition for building, altering or repairing school houses, or purchasing or improving school sites, and issuing bonds therefor, be by ballot. (Ill. Rev. Stat. 1945, chap. 122, pars. 19—3 and 19—5.) It specified a form of ballot to

be used by nonhigh school districts in connection with the issuance of bonds to pay tuition claims or judgments, (Ill. Rev. Stat. 1945, chap. 122, pars. 11—10 and 11—13,) and to be used by school districts in connection with the issuance of bonds for the payment of orders for wages of teachers or other claims against a school district, (Ill. Rev. Stat. 1945, chap. 122, par. 19—12,) and in connection with issuing bonds to create a working cash fund. (Ill. Rev. Stat. 1945, chap. 122, par. 20—7.) However, these ballot forms made no reference to the times of payment or the date or amount of the maturities of the bonds to be issued.

We conclude that it was the intent of the legislature to no longer require that such information appear in the notice of the election or in the ballot; and that the only requirement under sections 5A—10 and 5A—13 are that the notice of the election and the ballot contain the substance of the public measure.

The purpose of printing the substance of a public measure upon a ballot is not to furnish the electors with every detail regarding the public measure to be voted upon, but to enable them to readily identify the proposition, to know its fundamentals, its general effect, and to indicate their individual choice in the matter.

The substance of a public measure is adequately set forth if the ballot gives a fair portrayal of the chief features of the proposition in words of plain meaning, so that it can be understood by persons entitled to vote. (18 Am. Jur. sec. 180, p. 298; *In re Opinion of Justices,* 271 Mass. 582, 171 N.E. 294.) In our view, this does not require that the complete proposition be set forth in the official ballot, including the schedule of bond maturities.

It is well settled that an official ballot will not be vitiated by the incorporation of information beyond that required by the statute. When such additional information is incorporated in the ballot, the test is whether it would tend to confuse or misinform a voter so as to affect his free

choice. (*Knappenberger* v. *Hughes*, 377 Ill. 126; *People ex rel. Howard* v. *Chicago and Eastern Illinois Railroad Co.* 296 Ill. 246.) There is nothing misleading about the official ballot used in this election.

In absence of a legislative command that the schedule of bond maturities be incorporated in the ballot, the validity of the ballot involved is essentially a practical matter. The ballot in the case at bar informed the voter of the amount of the proposed bond issue, its purpose, the interest rates to be charged and the years in which the bonds would mature. It contained the substance of the public measure. We cannot believe that the result of this election was affected in any way by the typographical omission from the ballot. Accordingly, we hold that the official ballots used in this election were valid and the decree of the trial court is affirmed.

*Decree affirmed.*