THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MORRIS ELLIS, Defendant-Appellant.

First District (4th Division)   No. 61998

Opinion filed March 17, 1977.—Rehearing denied April 28, 1977.

Arthur Aaron Ellis and Morris W. Ellis, both of Chicago (Ellis and Ellis, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Sheldon Gardner, Dorothy Kirie, and R. Burke Kinnaird, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

The defendant, Morris Ellis, was charged with the following violations of the Illinois Election Code: (1) failure to comply with order of election authority (Ill. Rev. Stat. 1973, ch. 46, par. 29—11); (2) disregard of Election Code (Ill. Rev. Stat. 1973, ch. 46, par. 29—12), by soliciting votes within a polling place; and (3) disregard of Election Code (Ill. Rev. Stat. 1973, ch. 46, par. 29—12), by giving instructions to a voter in a voting machine. On conclusion of a bench trial, the court directed a verdict of not guilty as to the third charge, and found the defendant guilty of the first and second charges and assessed a fine of $100 on each of those two charges. Defendant appeals, contending that he was not proved guilty beyond a reasonable doubt of the offenses with which he was charged.

On March 19, 1974, the defendant was serving as a poll watcher during a primary election in the polling place located at 919 West Montrose Avenue. Also present at that location were Patricia Fust, a Republican judge of election, and Marion Clough, a Democratic judge of election.

Patricia Fust testified that at 9 a.m. on the above date, a man and a woman entered the polling place, each requesting a Republican ballot. She could not remember the names of the two voters. According to Ms. Fust, the defendant then told the voters, whom he apparently knew, that they were supposed to vote Democratic. Ms. Fust then asked the defendant to leave the voters alone. Marion Clough's testimony was substantially the same. She added that the man's name was Bunting and the woman's name was Marks.

Patricia Fust testified further that at approximately 10:45 a.m., a woman voter, who had declared Democratic, stepped into a voting machine and then requested assistance. Ms. Fust told Marion Clough to accompany her into the booth with the woman. Ms. Fust then proceeded to instruct the voter. The defendant then stepped into the booth and informed Ms. Fust that she was improperly instructing the voter.

Marion Clough testified as to the above incident that the woman wished

to vote for a certain candidate; however, she did not know how to vote. When Ms. Fust was trying to show the voter how to vote for the candidate, the defendant interrupted, objecting to the way the woman was being instructed.

Patricia Fust testified to a final incident. A voter entered and requested a Republican ballot. The defendant insisted that the voter really wanted to vote for a Democratic candidate. Ms. Fust stated that she then asked the voter what party he chose. The voter replied, "Republican." The defendant was talking to the man simultaneously. The voter then told Ms. Fust that he wished to vote for a certain candidate. She then had the designation on the binder changed from an "R" to a "D."

Marion Clough stated, as to the above occurrence, that the defendant had attempted to direct the unidentified voter, and further testified that defendant had passed out cards in the polling place. She admitted that she did not know what name was on the cards because she was not paying attention at the time.

Neither Patricia Fust nor Marion Clough reported any of the alleged incidents to the policeman on duty at the polling place; nor did they or anyone else present in the polling place call the Board of Elections Commission or any other election authority. Ms. Fust did call James Nolan, the Republican Committeeman for the 46th Ward, the office of the State's Attorney for Cook County, and the police. After an assistant State's Attorney arrived in response to her call, in an effort of conciliation, he requested that Ms. Fust accept the defendant's apology and that the matter be forgotten. She refused to do so.

Frank Alschuler testified that he was poll watcher at the polling place on March 19, 1974. He alleged that he heard the defendant talk to a voter. Thereafter, the witness observed the voter, Howard Bunting, cross out the "X" he had written in the Republican square and place an "X" in the square designated as Democratic on the application for ballot form. The witness was then shown the application for ballot signed by Howard Bunting. He admitted that the application exhibited no strikes or erasures. The application indicated that Mr. Bunting had received a Republican ballot.

Alschuler further testified that he also observed the defendant pass out campaign literature inside the polling place; he saw the defendant do this on two occasions. According to the witness, the title of the literature was "Bullet for Marovitz."

Marjorie Alschuler stated that on the day in question, both she and her husband acted as poll watchers for candidate Steven Klein. She said that she had campaign literature on her person inside the polling place, and that while she was inside her husband was outside campaigning. She

testified that after a voter had requested a Republican ballot, the defendant stated that the voter really wished a Democratic ballot. Although she admitted that she was not listening closely at the time, the witness maintained that the defendant said words to the effect that the candidate of the voter's choice was on the Democratic ballot. According to this witness, the judges, not the voter, then changed the markings on the ballot application. The witness could not remember the name of the voter involved, but believed that it began with a "P." In an attempt to refresh her recollection, Mrs. Alschuler was allowed, over objection, to examine the 173 applications for ballot which had been introduced into evidence. She finally identified the last name of the voter as being Pallaci, whose application for ballot had a cross deleted from the Republican square and a cross placed in the Democratic square. She could not recall the name of the judge who had changed the application or spoke to Pallaci. She admitted that at the time of the alleged incident, she could not read what was written on the application from where she was sitting. However, she testified that the application was not in the same condition as it had been at the polling place. She did not know whether or not the application had been the only one changed during that day.

Howard Bunting testified that he had entered the polling place on March 19, 1974, before 9 a.m. The defendant told some woman to give Mr. Bunting a Democratic ballot. Bunting said he would take a Republican ballot. The witness stated that there was no further conversation or comment from the defendant.

The defense called a number of character witnesses who attested to the defendant's excellent reputation in his community for truthfulness, honesty, and integrity.

Mary Hudik testified that on the day of the defendant's arrest, she served as a Democratic judge in the West Montrose polling place. On that day, she observed the defendant from 6 a.m. until the time of his arrest. At no time did she observe the defendant engage in any activity that was unusual. She did observe the defendant helping handicapped voters in and out of the polling place. Mary Hudik noticed that Patricia Fust exhibited a belligerent attitude toward the defendant. Ms. Hudik heard Ms. Fust admit that she was out to get the defendant. According to the witness, the defendant on one occasion asked Ms. Fust not to go behind the curtains of the voting machine booth and close them when a voter was voting. Defendant told Ms. Fust to close the curtains and step out of the booth. Ms. Fust then told the defendant to leave, which he did. Ms. Hudik testified that in the years she had worked in that precinct, she had never seen defendant enter a voting booth. She did not observe any campaign literature in defendant's possession on the date of the alleged occurrence;

he did not attempt to change any votes.

Genevieve Mudloff testified that on March 19, 1974, she was in the polling place serving as a checker. She testified that an election judge named Pat directed hostile remarks toward the defendant. Her testimony substantially corroborated that of Ms. Hudik.

Henrietta Marks testified that she and Howard Bunting entered the polling place at the same time on the day in question to vote. She saw the defendant at that time. Ms. Marks stated that she requested and received a Republican ballot. At no time did anyone interfere with her vote. She heard no conversation, nor did she hear the defendant tell Howard Bunting or herself to take a Democratic ballot.

The defendant testified that Patricia Fust displayed a hostile attitude toward him when he first entered the polling place. He observed that whenever a voter needed assistance, Ms. Fust would ask Marion Clough to enter the voting booth with her. They would enter the booth, close the curtains and remain so situated during the entire time the voter was voting. He next referred specifically to one of the incidents in question. According to the defendant, the two judges were inside the booth with the voter and the curtains were closed. There was an exchange of conversation. The voter asked to leave the booth. Ms. Fust told the voter that she had not finished voting, and was to vote for two candidates in the State Representative race. The voter questioned whom to vote for. Ms. Fust told her that she could vote for Klein or Merlo. The voter indicated that Klein would be satisfactory. The lever was pulled and they all exited the booth. Defendant then informed Ms. Fust that she was violating the law when she entered the closed booth to instruct the voter. He objected to her conduct and asked that she not repeat this procedure again. Ms. Fust told the defendant to leave the polling place, which he did. He denied that he violated or disobeyed any lawful order given to him by Patricia Fust.

The defendant further denied having told Mr. Pallaci to change his application for ballot from Republican to Democratic, or that he ever attempted to persuade any Republican voters to change their applications. He denied that he had any campaign literature that day, or passed out any literature within 100 feet of the polling place or in the polling place. He denied that he solicited any votes within 100 feet of the polling place or in the polling place. He denied that he at any time improperly instructed a voter how to vote. According to the defendant, he agreed to apologize to Ms. Fust because the assistant State's Attorney asked him to, and not because he had done anything wrong. Ms. Fust refused his apology and insisted that the defendant be arrested.

The defendant contends that the State did not prove beyond a

reasonable doubt his failure to comply with the order of an "election authority," in violation of section 29—11 of the Election Code (Ill. Rev. Stat. 1973, ch. 46, par. 29—11). The complaint charging this offense was subscribed to by Patricia Fust, a judge of election, and the order allegedly disobeyed was issued by her while serving in that capacity. The defendant argues that Ms. Fust was not an "election authority" within the purview of section 29—11, and that there can be no violation of that statute unless a lawful order has been issued by an "election authority" acting in the performance of the duties of the election authority. Therefore, defendant contends the complaint at bar was legally insufficient and his conviction on that charge must fall.

■■ We disagree with defendant's contention that a judge of election does not act with the capacity of an "election authority" within the meaning of section 29—11, and that a reversal of his conviction under the statute is thus warranted.

Section 29—11 of the Election Code provides as follows:

> "Any person who knowingly fails or refuses to comply with any lawful order of an election authority issued by the election authority in the performance of the duties of the election authority, shall be guilty of a Class A misdemeanor." Ill. Rev. Stat. 1973, ch. 46, par. 29—11.

Section 1—3(8) of the Election Code (Ill. Rev. Stat. 1973, ch. 46, par. 1—3(8)), defines "election authority" as follows:

> " 'Election authority' means a county clerk, a Board of Election Commissioners, or a clerk of a unit of local government or school district having election jurisdiction."

The defendant would have this court strictly construe the statutory definition of "election authority," and hold that a judge of election is neither an election authority nor is empowered with the capacity to function as an election authority. We are aware of the basic rule of statutory construction which requires that where a statute mentions or enumerates one or more certain things or modes of action, all other things or modes of action not mentioned are specifically excluded. (*Nelson v. Union Wire Rope Corp.* (1964), 31 Ill. 2d 69, 99, 199 N.E.2d 769; *People v. Criswell* (1973), 12 Ill. App. 3d 102, 107, 298 N.E.2d 391.) However, this rule should be employed by the judiciary to ascertain the true legislative intent behind the statute only where such intent is not clearly manifested by the language of the statute itself. (*Dick v. Roberts* (1956), 8 Ill. 2d 215, 219, 133 N.E.2d 305.) The rule was never intended to defeat or create doubt as to the legislative purpose. *People ex rel. County of Du Page v. Smith* (1961), 21 Ill. 2d 572, 581, 173 N.E.2d 485.

In general, in an effort to give effect to the objective or goals of a legislative scheme, the details of a statute should be construed in conformity with its dominating purpose. (*People v. Gibbs* (1952), 413 Ill. 154, 163, 108 N.E.2d 446.) The basic intent of the Election Code is to give all citizens a fair opportunity to vote and to prevent fraud. (*People ex rel. Schwartz v. Fagerholm* (1959), 17 Ill. 2d 131, 141, 161 N.E.2d 20.) It is in conformity with the general intent that we conclude that judges of election are empowered to carry out the delegated function of the election authority. In its regulation of the method of conducting elections, the legislature specifically provided that the State Board of Elections "* * * may by regulation delegate any of its duties or functions under this Article, * * *." (Ill. Rev. Stat. 1973, ch. 46, par. 1A—8(12).) Section 17—29 (Ill. Rev. Stat. 1973, ch. 46, par. 17—29) specifically provides that "Judges of election shall enforce the provisions of this Section."

The Election Code further provides the State Board of Elections with a detailed method for instructing judges of election and delegating to them its function to enforce the provisions of the Act. (Ill. Rev. Stat. 1973, ch. 46, par. 1A-8(3).) It would be inconsistent with the legislative intent manifested by the above statutory provisions to hold that within the context of an election, a judge of election is not empowered to enforce that section of the Election Code.

■■ However, in this case, we find that the State failed to present evidence sufficient to convict the defendant beyond a reasonable doubt of the offenses with which he was charged.

The trial court found that evidence presented was inadequate to convict the defendant of the offense of disregard of Election Code (Ill. Rev. Stat. 1973, ch. 46, par. 29—12) (his allegedly instructing a voter in a voting machine), and directed a verdict of not guilty as to that charge. We believe that the evidence relating to the two remaining charges was equally insufficient in factual substance to support a conviction.

A criminal defendant is entitled to be presumed innocent until proved guilty and the State has the burden to prove the defendant's guilt beyond a reasonable doubt. (*People v. Coulson* (1958), 13 Ill. 2d 290, 296, 149 N.E.2d 96.) The Illinois Supreme Court held in *Coulson*, at page 296, that:

"A judgment of conviction can be sustained only on credible evidence which removed all reasonable doubt of the guilt of the defendant, and it is the insufficiency of the People's evidence which creates such doubt. If a conviction is to be sustained, it must rest on the strength of the People's case and not on the weakness of the defendant's case."

In *People v. Charleston* (1970), 47 Ill. 2d 19, 22, 264 N.E.2d 199, Mr. Justice Schaefer, quoting from *People v. Reese* (1966), 34 Ill. 2d 77, 80, 213 N.E.2d 526, 527, stated:

" 'We attach great weight to the findings of the trier of fact, including his appraisal of the credibility of witnesses, but they are not conclusive and it is our duty to set a conviction aside where the evidence is so unsatisfactory as to raise a reasonable doubt of a defendant's guilt.' "

In the instant case, the evidence elicited at trial was clearly insufficient to remove all reasonable doubt as to the guilt or innocence of the defendant, and is, therefore, insufficient to sustain his convictions upon review.

The defendant denied any failure on his part to comply with an order directed toward him by Patricia Fust. He stated that she never told him to cease interfering with voters. There is no dispute that when she did order him to leave the polling place, he left immediately. Voter Howard Bunting testified that he heard no conversation exchanged between Ms. Fust and the defendant. After Bunting requested a Republican ballot, there was no comment from the defendant. Voter Henrietta Marks testified that she requested and received a Republican ballot. She never heard the defendant instruct anyone to take a different ballot. She heard no conversation exchanged when she voted. Frank Alschuler testified that Howard Bunting was the voter allegedly intimidated into changing his ballot application. After refreshing her recollection, Marjorie Alschuler testified that the voter's name was Pallaci. Frank Alschuler testified that the defendant passed out campaign literature in the polling place. Alschuler stated that the literature was entitled "Bullet for Marovitz." Ms. Clough testified that the defendant distributed cards in the polling place; she did not see what was written on the cards. No cards or literature was produced at the trial. The defendant denied soliciting votes or passing out literature in the polling place or within 100 feet of the polling place. Several witnesses testified that they never saw the defendant with campaign literature, and that he never improperly interfered with any voters. They agreed that Patricia Fust displayed an extremely hostile attitude toward the defendant.

We believe that the evidence raises sufficient doubt as to the guilt of the defendant and, accordingly, we reverse the trial court.

Reversed.

DIERINGER, P. J., and LINN, J.*, concur.

---

* At the time of oral argument of this case, Justice Henry L. Burman sat with Justices Johnson and Dieringer. Subsequently, Justice Burman retired. Since that time, Justice Linn was designated the third member of the panel and has listened to the tape of the oral argument, has read the briefs and excerpts from the record.