WILLIAM R. KRAUSS *et al.*, Plaintiffs-Appellants, v. THE BOARD OF ELECTION COMMISSIONERS OF THE CITY OF CHICAGO, Defendant-Appellee (Beverly Warner *et al.*, Intervenors-Appellees).—AMELIA T. GREEN *et al.*, Plaintiffs-Appellants, v. THE BOARD OF ELECTION COMMISSIONERS OF THE CITY OF CHICAGO, Defendant-Appellee.

First District (6th Division)   Nos. 1—95—2637, 1—95—2638 cons.

Opinion filed March 31, 1997.—Modified on denial of rehearing May 23, 1997.

Roxane Spinasanta, of Riverside, and Jerome B. Meites, of McDermott, Will & Emery, of Chicago, for appellants.

James M. Scanlon, of Rieff & Scanlon, of Chicago, for appellee.

Patricia Mendoza and Maria Valdez, of Mexican American Legal Defense & Educational Fund, of Chicago, for *amicus curiae*.

JUSTICE THEIS delivered the opinion of the court:

Appellants, 13 registered voters of the 22nd precinct of the 46th ward and five registered voters of the 21st precinct of the 21st ward in the City of Chicago (voters), present a consolidated appeal from the dismissal of their complaints challenging the validity of ballots used in local option elections held on April 4, 1995. The local option elections were held to determine whether to allow the retail sale of alcoholic liquor in those precincts. Afterwards, voters from both precincts promptly filed suit in the circuit court of Cook County challenging the validity of the election ballots and seeking to have the elections declared void. 10 ILCS 5/23—24 (West 1994); 235 ILCS 5/9—1 (West 1994). The Board of Election Commissioners of the City of Chicago (Board) filed motions to strike and dismiss the voters' complaints. 735 ILCS 5/2—615, 2—619 (West 1994). The trial court granted the Board's motions and dismissed the voters' complaints with prejudice. On appeal, the voters contend that the trial court erred in dismissing their complaints. We agree and reverse the trial court's decision.

The voters alleged that the election ballots did not comply with the format as required by section 9—6 of the Liquor Control Act and, thus, the elections were void. 235 ILCS 5/9—6 (West 1994); *Smith v. Calhoun Community Unit School District No. 40*, 16 Ill. 2d 328, 332, 157 N.E.2d 59, 61 (1959). The Board filed motions to strike and dismiss the voters' complaints. The Board argued that no prejudice or actual voter confusion was alleged by the plaintiffs. In addition, the Board asserted that the ballots substantially complied with the required statutory form and that *laches* barred the voters from bringing suit. Four registered voters in the 22nd precinct intervened in support of the Board's position. The trial court granted the Board's motions and dismissed the voters' complaints with prejudice. The trial court then stayed the order pending appeal.

The first issue on appeal is whether the voters' complaints failed to state a cause of action because they failed to allege prejudice or actual voter confusion. 735 ILCS 5/2—615 (West 1994). We review section 2—615 motions *de novo. Lawson v. City of Chicago*, 278 Ill. App. 3d 628, 634, 662 N.E.2d 1377, 1382 (1996). On review, the court looks to whether the complaint alleged the essential elements of a cause of action and accepts all well-pleaded facts and all reasonable inferences as true. *Lawson*, 278 Ill. App. 3d at 634, 662 N.E.2d at 1382.

■ Suits seeking to contest the validity of a local option election are governed by the specific procedures of the Illinois Liquor Control Act. 235 ILCS 5/9—19 (West 1994); *Chambers v. Board of Election Commissioners*, 183 Ill. App. 3d 567, 569, 571, 539 N.E.2d 267, 269, 270 (1989). Section 9—19 of the Liquor Control Act provides the procedures for contesting the validity of a local option election:

"Any 5 legal voters *** may within 10 days after the canvass of the returns *** contest the validity of such election ***. *** Any registered voter in the political subdivision or precinct in which the election has been held may appear in person, or by counsel, in any such contest to defend or oppose the validity of the election." 235 ILCS 5/9—19 (West 1994).

■ Nothing in the Liquor Control Act requires plaintiffs contesting the validity of local option elections to allege prejudice or actual voter confusion. Further, no cases addressing the validity of a ballot proposition have required a plaintiff to allege actual voter confusion. The rationale is that challenges to the validity of an election question the basic legality of the election, not the outcome. *Ross v. Kozubowski*, 182 Ill. App. 3d 687, 694, 538 N.E.2d 623, 628 (1989), citing *Village of Hinsdale v. Du Page County Court*, 281 Ill. App. 571 (1935). We find that the voters stated a cause of action challenging the validity of the ballot used in the local option elections.

■ The next question is whether the trial court erred in dismissing the voters' complaints on the ground that the ballots were legally sufficient. 735 ILCS 5/2—619 (West 1994). This court also reviews section 2—619 motions under a *de novo* standard. *Lawson*, 278 Ill. App. 3d at 634, 662 N.E.2d at 1382.

■ When a special statute dictates the form of the ballot, there must be substantial compliance with the special statutory mandate or the election is void. *Smith v. Calhoun Community Unit School District No. 40*, 16 Ill. 2d 328, 332, 157 N.E.2d 59, 61 (1959). Substantial compliance, rather than exact compliance, with this type of statutory ballot is sufficient. *People ex rel. Davis v. Chicago, Burlington & Quincy R.R. Co.*, 48 Ill. 2d 176, 182, 268 N.E.2d 411, 414-15 (1971).

Determination of substantial compliance is a question of law for the court. The test is whether the voter was given as clear an alternative as if the statutory form had been identically followed. *Dick v. Roberts*, 8 Ill. 2d 215, 221, 133 N.E.2d 305, 309 (1956). The focus is on the existence of a meaningful choice for the voters. A ballot is sufficient if the voter has a clear opportunity to express a choice either for or against it. *Hoogasian v. Regional Transportation Authority*, 58 Ill. 2d 117, 123, 317 N.E.2d 534, 538 (1974). Accord *Knappenberger v. Hughes*, 377 Ill. 126, 132, 35 N.E.2d 317, 320 (1941); *People ex rel. Howard v. Chicago & Eastern Illinois R.R. Co.*, 296 Ill. 246, 251, 129 N.E. 846, 848 (1921).

Thus, courts consider whether the deviation in the ballot was misleading or confusing to the voters. *Davis*, 48 Ill. 2d at 182, 268 N.E.2d at 415; *Smith*, 16 Ill. 2d at 336, 157 N.E.2d at 63. In *People ex rel. Davis v. Chicago, Burlington & Quincy R.R. Co.*, when the ballot provided "for" and "against" rather than "yes" and "no," the court found the deviation acceptable because "there is no contention or likelihood that the deviation in wording confused the voters or obstructed them in voting either for or against the proposition, in accordance with their inclinations." *Davis*, 48 Ill. 2d at 182, 268 N.E.2d at 415. Moreover, deviations consisting merely of additional information not affecting the voters' choice do not void the election. *Smith*, 16 Ill. 2d at 335, 157 N.E.2d at 63; *Dick*, 8 Ill. 2d at 222, 133 N.E.2d at 309; *Knappenberger*, 377 Ill. at 132-33, 35 N.E.2d at 320.

Section 9—6 of the Illinois Liquor Control Act (235 ILCS 5/9—6 (West 1994)) specifies the format of local referenda on the retail sale of alcoholic liquor and provides: "The proposition shall be in substantially the following form:"

| Shall the sale at retail of alcoholic liquor (or alcoholic liquor other than beer containing not more than 4% of alcohol by weight) (or alcoholic liquor containing more than 4% alcohol by weight in the original package and not for consumption on the premises) be prohibited in (or at) ...............? | YES | |
|---|---|---|
| | NO | |

Except for the territorial descriptions, the actual ballots for both wards were identical. Thus, the ballot for the 46th ward appeared as follows:

ALCOHOLIC LIQUOR     PROPOSITION BALLOT
APRIL 4, 1995
PRECINCT 22     WARD 46

BEBIDA ALCOHOLICA     BALOTA DE PROPUESTA
ABRIL 4, DE 1995
RECINTO 22     DISTRITO 46

Description of the territory to be affected:
Beginning at the Northeast corner of Sheridan Rd. and Wilson Ave., then North on the East side of Sheridan Rd. to Eastwood Ave.; then East on the South side of Eastwood Ave. to Clarendon Ave.; then South on the West side of Clarendon Ave. to Wilson Ave.; then West on the North side of Wilson Ave. to the place of beginning.

Descripcion del territorio que sera afectado:
Empezando en la esquina Noreste de Sheridan Road y Wilson Ave.; entonces Norte en el lado Este de Sheridan Rd. a Eastwood Ave.; entonces Este en el lado Sur de Eastwood Ave. a Clarendon Ave.; entonces Sur en el lado Oeste de Clarendon Ave. a Wilson Ave.; entonces Oeste en el lado Norte de Wilson Ave. al punto de partida.

| | |
|---|---|
| YES<br>← 65<br>SI | "SHALL THE SALE AT RETAIL OF ALCOHOLIC LIQUOR BE PROHIBITED IN THIS 22ND PRECINCT OF THE 46TH WARD OF THE CITY OF CHICAGO?" (AS SUCH PRECINCT EXISTED AS OF THE LAST GENERAL ELECTION) |
| NO<br>← 67<br>NO | "¿DEBERIA PROHIBIRSE LA VENTA AL DETAL DE BEBIDA ALCOHOLICA EN ESTE 22AVO RECINTO DEL 46AVO DISTRITO DE LA CIUDAD DE CHICAGO?" (COMO TAL RECINTO EXISTIA COMO DE LA ULTIMA ELECCION GENERAL) |

The voters argue that the "totality of deviations" defeats substantial compliance because the ballots were invalid as to both substance and form. As to substance, the voters argue that the erroneous and nonsensical Spanish translations did not substantially comply with the statute. As to form, the voters complain that the horizontal line extending between the English and Spanish versions of the questions *and* answers created both a physical and psychological barrier for voters. The Board contends that the ballots substantially complied with section 9—6 of the Liquor Control Act because adequate information was provided and the voters had a clear choice of "yes" or "no." The Board also argues that any mistranslation of the questions into Spanish was irrelevant and did not change the election outcome.

■ We first consider the sufficiency of the substance of the ballot propositions. The content of the English questions was sufficient. More troubling, however, are the Spanish versions of the propositions, which did not present the same questions as were presented in English. As alleged in the voters' complaints, the Spanish versions: (1) used the word "Debida," which means "to owe" in English rather than "Bebida," which means "to drink" in English; (2) twice used the word "Recinto," which has no Spanish meaning, instead of the Spanish word "Precinto," which means "precinct" in English; and (3) used an expression "de la ultima eleccion," which means "of the last election" in English, rather than "desde la ultima eleccion," which means "since the last election" in English. The voters charged that the result of these mistakes was a proposition which read:

> "Should the sale of alcoholic [a owing to] in this 21st [misspelled word] area of 21st [misspelled word] be prohibited in the City of Chicago? (As such precinct existed [of] the last general election[.])"

The 46th ward question was similarly phrased.

The Board concedes that the Spanish versions were misleading but counters that the Spanish versions were merely additional, helpful information. The Board explains that it was attempting to comply with the Voting Rights Language Assistance Act. 42 U.S.C. § 1973aa—1a (1994). The Board also argues that there were too few Spanish-speaking voters in those precincts to affect the election outcomes.

We find no merit in either of the Board's explanations for the improper Spanish translations. We first reject the Board's argument that few voters were affected. Section 9—19 of the Liquor Control Act makes clear that any five voters may contest the validity of an election. 235 ILCS 5/9—19 (West 1994). "[A]ll qualified citizens have a constitutionally protected right to vote and to have their votes counted." *Tully v. Edgar*, 171 Ill. 2d 297, 305-06, 664 N.E.2d 43, 48

(1996). The Board may not argue that a little disenfranchisement is harmless. We also reject the Board's argument that it was attempting to comply with the Voting Rights Language Assistance Act. Whether the Board complied with the Voting Rights Act is irrelevant. Once the Board affirmatively undertook to provide the Spanish versions of the local option referenda, it had an obligation to do so correctly. The Board can make no argument that the Spanish translations complied with section 9—6 of the Liquor Control Act.

The trial court erred in finding, as a matter of law, that the Spanish versions of the local option propositions substantially complied with section 9—6 of the Liquor Control Act. Thus, we need not address whether the form of the propositions complied with section 9—6. Moreover, because our decision is based on compliance with the Liquor Control Act, we need not consider the validity of the local option ballots with respect to the Voting Rights Language Assistance Act.

■ The voters' final argument on appeal is that the trial court erred by imposing the equitable doctrine of *laches* to bar the voters' claims of invalid ballot formation. The voters argue that they brought suit within the 10-day period specified under section 9—19 of the Liquor Control Act. The Board counters that its publication of the ballot several days prior to the election gave the voters either actual or constructive notice of the ballot to defeat any challenges.

Typically, *laches* requires a showing of a lack of diligence on the part of the plaintiffs and that defendant was prejudiced by plaintiff's lack of diligence. *Kurtz v. Solomon*, 275 Ill. App. 3d 643, 653, 656 N.E.2d 184, 192 (1995). The Election Code provides: "Ballots shall be printed *** at least two days before each election and subject to the inspection of candidates and their agents; if any mistakes be discovered they shall be corrected without delay." 10 ILCS 5/16—5 (West 1994). Courts applying *laches* in the election context have enforced the statutory option of candidates or their political parties to inspect the ballots. *In re Contest of Election for Governor & Lieutenant Governor Held at the General Election on November 2, 1982*, 93 Ill. 2d 463, 488, 444 N.E.2d 170, 181 (1983); *People ex rel. Goldberg v. Delaney*, 39 Ill. 2d 474, 481, 236 N.E.2d 689, 693 (1968).

In contrast, election provisions governing constitutional amendments or public questions do not indicate who should inspect the ballot. See 10 ILCS 5/16—6, 16—7 (West 1994); 235 ILCS 5/9—5 (West 1994). Thus, while the Liquor Control Act requires ballots to be printed and available for inspection prior to the actual election, the statute specifically indicates that failure to publish does not affect the validity of the election. 235 ILCS 5/9—5 (West 1994). Nothing in

988

this case indicates that the voters had a duty to inspect the referendum ballots prior to election day. Therefore, *laches* is not an appropriate bar to the voters' claims.

In summary, the voters stated a valid cause of action contesting the validity of ballots used on April 4, 1995, in the local options elections held in the 22nd precinct of the 46th ward and the 21st precinct of the 21st ward in the City of Chicago. Further, we cannot say, as a matter of law, that the ballots presented in these local option elections substantially complied with section 9—6 of the Illinois Liquor Control Act. Because our decision is based on compliance with the Liquor Control Act, we need not address the applicability of the federal Voting Rights Language Assistance Act. We also find that *laches* is not a proper bar to the voters' suits. We reverse the trial court's order granting the Board's motions to strike and dismiss and remand the cause.

Reversed and remanded.

GREIMAN, P.J., and ZWICK, J., concur.