SAMOUR, INC., by Niru Patel, *et al.*, Plaintiffs-Appellees, v. THE BOARD OF ELECTION COMMISSIONERS OF THE CITY OF CHICAGO, Defendant-Appellant.

First District (2nd Division)   No. 1—04—3630

Opinion filed October 25, 2005.—Rehearing denied December 5, 2005.

James M. Scanlon and Joan T. Agnew, both of James M. Scanlon & Associates, P.C., of Chicago, for appellant.

Michael E. Lavelle and William J. Cooley, both of Chicago, for appellees.

JUSTICE WOLFSON delivered the opinion of the court:

The issue in this case is whether errors in Chinese translation on a ballot used in a referendum election held under the Liquor Control Act of 1934 (the Act) (235 ILCS 5/1—1 *et seq.* (West 2004)) invalidated the election. The two errors were: (1) the transposition of the ward and precinct numbers in two locations on the ballot; and (2) an imprecise translation of the phrase "sale at retail." While the trial court held omitting the words "at retail" from the Chinese translation was acceptable, it invalidated the election because of the transposition of the ward and precinct numbers. We affirm the trial court.

FACTS

On February 25, 2003, a referendum election was held pursuant to the Act in the 45th Precinct of the 15th Ward (the Precinct) in Chicago. For that election, the ballots were written in English, Spanish, and Chinese. The title at the top of the ballot read, "Alcoholic Liquor Proposition Ballot Municipal General Election Chicago, Illinois February 25, 2003." After the title, the ward and precinct numbers were given in the upper left-hand corner. Immediately after the ward and precinct numbers, a "DESCRIPTION OF AREA TO BE AFFECTED" appeared. The English version of the description read as follows:

> "Beginning at the intersection of S. Mozart St. and W. 63rd St., thence east on 63rd St. to S. California Ave., thence south on S. California Ave. to W. 65th St., thence west on 65th St. to S. Francisco Ave., thence north on S. Francisco Ave. to W. 64th St., thence east on W. 64th St., to S. Mozart, thence north on S. Mozart to the place of beginning."

After accurate street descriptions were given in the three languages, the proposition up for vote appeared in a box. In English, the proposition stated, "Shall the sale at retail of alcoholic liquor be prohibited in this 45th Precinct of the 15th Ward of the City of Chicago (as such precinct existed as of the last General Election[)]?"

On March 14, 2003, plaintiffs Samour, Incorporated, by Niru Patel, and several registered resident voters from the Precinct filed their verified complaint to contest the validity of the referendum election against the defendant, the Board of Election Commissioners of the City of Chicago (the Board). The plaintiffs claimed that the Chinese translation of the proposition to prohibit the retail sale of alcoholic

liquor within the Precinct did not comply with the form required by the Act. First, the Chinese version was different than the English version because it asked voters whether alcohol shall be prohibited in the 15th precinct of the 45th ward, instead of the 45th precinct of the 15th ward. Second, the Chinese translation of the proposition differed from the English version because it asked voters whether the sale of alcohol should be prohibited rather than the sale *at retail* of alcoholic liquor.

At the bench trial, Hanlelore Mui, a freelance interpreter and translator of the Chinese language, testified on behalf of the plaintiffs. Although Mui was given a ballot from the 32nd Precinct of the 48th Ward, the parties stipulated the matters raised during her testimony were applicable to the complaint regarding the Precinct. Mui was asked about any differences between the Chinese and English versions of the ballot. According to Mui, the Chinese version asked, "if the sale of liquor in general should be prohibited *** in the 48th Precinct of 32nd district in Chicago City." Mui pointed out that the precinct and ward numbers were transposed in the Chinese version. The same inversion of the numbers appeared in the upper left-hand corner of the ballot page. Mui said:

> "The number of the precinct and the number of the ward was translated in a position that could be easily confusing.
> * * *
> *** For someone who doesn't know how to read the description of area then probably they would think they are looking at the wrong ballot, but of course if the person can read the directions they can easily solve that problem."

Mui also said the Chinese version of the ballot used the word "sale" without the additional term "at retail." Mui explained that the Chinese word used would include all types of sales including wholesale, resale, or for personal consumption. Mui concluded, "The [Chinese] translation has omissions of important meaningful words from the original so [she] would say it's not correct ***."

On cross-examination, Mui testified a more accurate translation of "at retail" would have used the Chinese character "ling shou" instead of "xiao shou" as used on the ballot.

Dr. Richard Gu testified on behalf of the Board. Dr. Gu studied and taught Chinese and English translations for 11 years at Northwestern University. Dr. Gu testified that a Chinese voter would not be confused by the transposition of the ward and precinct numbers because it was a common translation error. He opined that Chinese voters would double-check the error and would rely on the area description, which was correct, rather than the ward and precinct numbers.

Dr. Gu also testified the term "xiao shou" is generally taught and understood to include retail sales. He said the Chinese language has over 40,000 characters. Chinese teachers choose to teach only the most commonly used words, so the general public is not familiar with less commonly used words.

After weighing the testimony from Mui and Dr. Gu, the trial court determined, as a matter of law, the ballot's reference to the sale of alcoholic liquor substantially complied with the Act despite the omission of "at retail" from the Chinese translation. But the court also found the transposition of ward and precinct numbers put a Chinese-speaking voter "in a different position" than English- and Spanish-speaking voters. On that basis, the court found the ballot did not substantially comply with the Act. It invalidated the referendum.

DECISION

I. Standard of Review

■ The parties disagree about the appropriate standard of review to be applied in this case. In its opening brief, the Board contends we should apply the *de novo* standard of review because the sole issue presented in this case—whether the ballot substantially complied with the Act—is a question of law. Plaintiffs contend the trial court made its decision after weighing the testimony at trial and, as a result, we should disturb its findings only if we find them against the manifest weight of the evidence. In reply, the Board contends that this appeal presents a mixed question of fact and law, which requires the clearly erroneous standard of review.

"[A] mixed question [of law and fact] is one in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, or whether the rule of law as applied to the established facts is or is not violated." *Moss v. Deptartment of Employment Security*, 357 Ill. App. 3d 980, 984, 830 N.E.2d 663 (2005).

In this case, we must decide whether the Chinese translation on the ballot substantially complied with the Act. See *Krauss v. Board of Election Commissioners*, 287 Ill. App. 3d 981, 984, 681 N.E.2d 514 (1997).

Typically, substantial compliance with the Act is a question of law. *Krauss*, 287 Ill. App. 3d at 984. Here, it becomes a mixed question of law and fact because we must decide statutory compliance based on facts presented through witness testimony regarding English-to-Chinese translations. The trial judge weighed those facts. Accordingly, we review the case under the clearly erroneous standard. *Moss*, 357 Ill. App. 3d at 984.

II. Substantial Compliance With the Act

Both parties agree the only question we must answer is whether the ballot used in the February 25, 2003, municipal election in the Precinct substantially complied with the Act.

■ Section 9—6 of the Act provides the form of the proposition to be used in a local referendum as follows:

"The proposition shall be in substantially the following form:

Shall the sale at retail of alcoholic liquor (or alcoholic liquor other than beer containing not more than 4% of alcohol by weight) (or alcoholic liquor containing more than 4% alcohol by weight in the original package and not for consumption on the premises) be prohibited in (or at) ...?" 235 ILCS 5/9—6 (West 2002).

The section also requires the proposition ballot to contain "a common description of the precinct in plain and nonlegal language" unless the election official determines that a description will not fit on the ballot used in the election. 235 ILCS 5/9—6 (West 2002). If the description is not included on the ballot, large printed copies of the precinct's description "shall be prominently displayed in the precinct polling place at the election." 235 ILCS 5/9—6 (West 2002).

■ When a statute specifies the form of the ballot, the ballot must substantially comply with the statutory mandate or the election is void. *Krauss*, 287 Ill. App. 3d at 984, citing *Smith v. Calhoun Community Unit School District No. 40*, 16 Ill. 2d 328, 332, 157 N.E.2d 59 (1959). The test we must apply to determine substantial compliance is whether voters were given "as clear an alternative as if the statutory form had been identically followed." *Krauss*, 287 Ill. App. 3d at 984, citing *Dick v. Roberts*, 8 Ill. 2d 215, 221, 133 N.E.2d 305 (1956). If the ballot gives the voter a clear opportunity to express a meaningful choice either for or against a measure, it is sufficient. *Krauss*, 287 Ill. App. 3d at 984.

Another consideration is whether voters would be misled or confused by the ballot. *Krauss*, 287 Ill. App. 3d at 984; see also *People ex rel. Davis v. Chicago, Burlington & Quincy R.R. Co.*, 48 Ill. 2d 176, 182, 268 N.E.2d 411 (1971) (no contention or likelihood that the deviation in the ballot confused voters). Voters challenging the validity of a local option election do not have to allege or prove actual voter confusion. *Krauss*, 287 Ill. App. 3d at 983.

Keeping these principles in mind, we first turn to the transposition of ward and precinct numbers on the face of the ballot.

A. Transposition of Ward and Precinct Numbers

■ Both parties agree that the ward and precinct numbers were

written incorrectly in Chinese in two places on the ballot. That is, on the upper left-hand corner of the ballot the English and Spanish references to the ward and precinct were accurate, first the number of the ward—15—and then the number of the precinct—45. But the Chinese translation had it reversed—Ward 45, Precinct 15. Then, in the body of the question to be voted on, the Chinese translation again incorrectly referred to the 45th ward and the 15th precinct.

The Board contends that despite these errors the ballot substantially complied with the Act. The Board contends Chinese-speaking voters would not be confused by the error for two reasons: (1) the error is common when translating the order of numeric designations from English to Chinese; and (2) the description of the Precinct by its boundaries appeared correctly on the ballot.

The parties focus on two cases: *Havlik v. Marcin*, 132 Ill. App. 2d 532, 270 N.E.2d 189 (1971), and *Love v. Marcin*, 47 Ill. App. 3d 715, 365 N.E.2d 100 (1977).

In *Havlik*, the ballots used in a local referendum held pursuant to the Act asked voters whether the sale of alcoholic liquor should be prohibited in "this precinct." Voters challenging the election contended the ballot was "inadequate" and "ambiguous" because the proper name of the precinct was not used. This court found the ballots substantially complied with the Act because the words "this precinct" gave voters a clear and understandable statement of the alternatives before them. The court noted that although some citizens may not know or remember the number of their precinct or ward, "every voter of intelligence would know that the words 'this precinct' applied to the compact geographical area within which [the voter's] home and polling place are located." *Havlik*, 132 Ill. App. 2d at 537.

In *Love*, voters challenging the election contended the ballots were vague and imprecise, because the legal descriptions provided only the ward and precinct numbers, without further description. The court found the ballots complied with the statute, which, at the time, did not require "a common description of the precinct in plain and nonlegal language" (see 235 ILCS 5/9—6 (West 2002)). *Love*, 47 Ill. App. 3d at 718.

This case is different than *Love* and *Havlik*. In those cases, the wording used to describe the precinct, although allegedly vague, was correct. That cannot be said of the two designations of ward and precinct numbers on the ballot in this case.

"A substantial copy of the form of the ballot designated in the statute must evidently be one that contains the essence of the form in the statute,—one giving the *correct* idea but not necessarily the exact expressions in the statutory form." (Emphasis added.) *People ex rel.*

*Howard v. Chicago & Eastern Illinois R.R. Co.*, 296 Ill. 246, 249, 129 N.E. 846 (1921). We do not believe two incorrect references to the ward and precinct numbers meet the threshold of substantial compliance.

If the erroneous references were the only descriptions of the ward and precinct appearing on the ballot, then the Chinese-speaking voters indisputably would have been denied a clear choice regarding area affected by their vote to prohibit the sale of alcoholic beverages. But our inquiry does not end here, because the ballots in question included a correct common description of the Precinct, providing its street boundaries as required by section 9—6 (235 ILCS 5/9—6 (West 2002)).

The words "DESCRIPTION OF AREA TO BE AFFECTED" appear above the description. We must decide whether this common description saves the ballot. That is, did the precinct's common description alleviate any confusion caused by the incorrect ward and precinct numbers and provide Chinese-speaking voters a meaningful choice either for or against the measure?

In this case, the expert witnesses disagreed about whether Chinese voters would be confused by the conflicting descriptions of the precinct. Mui testified that confusion was likely "for someone who [did not] know how to read the description of the area," while Dr. Gu said voters would have relied on the common description because the mistake in the numbers was a common translation error. The trial court obviously accepted Mui's testimony on this issue.

Strictly speaking, these were not errors in form. These were errors in substance. A Chinese-speaking voter was confronted with a ballot that in two places told him or her the question to be voted on related to some other ward and precinct. Whether the incorrect translations put Chinese-speaking voters in a position different than English- and Spanish-speaking voters, as the trial court found, is not the basis for our conclusion that the trial court reached the right result. Rather, we conclude Chinese-speaking voters were deprived of a clear opportunity to express a meaningful choice either for or against the measure. The danger of voter confusion was too great. Voters should not have to wonder why they were handed a particular ballot.

In *Krauss*, voters challenged the election because the Spanish translation appearing on the ballot did not comply with section 9—6 of the Act. There, several words were misspelled or incorrectly translated into the Spanish. For example, "debida," the Spanish word meaning "to owe," appeared in place of "bebida," the word for beverage or drink. Additionally, the Spanish word for "precinct" was misspelled, and the phrase "since the last election" was not translated correctly.

This court found the ballot did not substantially comply. We said: "The Board may not argue that a little disenfranchisement is harmless. *** Once the Board affirmatively undertook to provide the Spanish versions of the local option referenda, it had an obligation to do so correctly." *Krauss*, 287 Ill. App. 3d at 987.

We do not believe the trial court clearly erred when it found the ballot in this case did not substantially comply with the Act.

B. Omission of Chinese Character Meaning "Retail Sale"

The Board contends the trial court correctly decided the ballot substantially complied with the Act despite the omission of the Chinese character meaning "retail sale." Plaintiffs contend the Chinese translation should have used the character "ling shou," which means "retail sale," rather than "xiao shou," which simply means "sale."

Because we find transposition of the ward and precinct numbers was fatal to the election, there is no need to consider whether omission of the Chinese character meaning "retail sale" voided the election.

CONCLUSION

We affirm the trial court's finding that the ballot at issue did not substantially comply with the Act because the description of the ward and precinct numbers was wrongly translated in two places on the ballot.

Affirmed.

GARCIA, P.J., and HALL, J., concur.