RON BURLEY, a Minor, by Kimberly Burley, his Mother and Next Friend, Plaintiff-Appellant, v. ON THE WATERFRONT, INC., Defendant (Rockford Park District, Defendant-Appellee).

Second District   No. 2—91—1179

Opinion filed May 6, 1992.

John M. Boreen, of Rockford, for appellant.

Alfred W. Cowan, Jr., of Brassfield, Cowan & Howard, of Rockford, for appellee.

JUSTICE McLAREN delivered the opinion of the court:

The plaintiff, Ron Burley, a minor, by Kimberly Burley, his mother and next friend, filed a two-count amended complaint in the circuit court of Winnebago County naming as defendants On the Waterfront, Inc., and the Rockford Park District (the Park District). The trial court dismissed count II directed against the Park District, and the plaintiff appeals. We affirm.

The plaintiff raises the following issues on appeal: (1) whether the Park District owed the minor/plaintiff a duty to protect him from criminal attack by a third person while on Park District property; (2) whether the Park District voluntarily undertook to provide security such that it owed a duty to the minor plaintiff; (3) whether the Park District waived tort immunity by entering into an agreement to provide security for the area where the minor plaintiff was injured; and

(4) whether the Park District owed a duty to provide adequate lighting in the area where the minor plaintiff was injured.

Count II of the first amended complaint alleges in part:

"3. That on and before August 31, 1990, the Defendant, ROCKFORD PARK DISTRICT, owned, managed, and maintained the walkway under the Jefferson Street Bridge located in Rockford, Illinois.

4. That on October 30, 1987, the ROCKFORD PARK DISTRICT entered into an agreement with the City of Rockford to build, maintain, and provide security protection to the walkway under the Jefferson Street Bridge in the City of Rockford, Illinois. A copy of the Agreement is attached hereto as Exhibit A.

5. That on and before August 31, 1990, the Defendant, ROCKFORD PARK DISTRICT, helped and cooperated with ON THE WATERFRONT, INC., a Corporation, to plan, organize, operate, and provide security personnel for a festival known as 'ON THE WATERFRONT' festival located in Rockford, Illinois.

6. That on August 31, 1990, the 'ON THE WATERFRONT' festival was open to members of the public including RON BURLEY who purchased an admission button entitling RON BURLEY to use the festival grounds which were open to the public from 5 p.m. to about 11:30 p.m.

7. That on August 31, 1990, the Defendant, ROCKFORD PARK DISTRICT, had a duty in accordance with the attached agreement to provide security to members of the public using the walkway under the Jefferson Street Bridge while attending 'ON THE WATERFRONT' festival in Rockford, Illinois.

8. That on the evening of August 31, 1990, a carnival consisting of various amusement rides operated by a private firm was conducted on land owned by the Defendant, ROCKFORD PARK DISTRICT, and with the permission of the ROCKFORD PARK DISTRICT, which carnival was located in the parking lot south of the Riverview Ice House and bounded on the east by Madison Street [and] on [the] west by Water Street in Rockford, Illinois.

9. That on the above-described date anyone who did not purchase a festival admission button was permitted by the Defendant to attend the carnival (consisting of various amusement rides) located on the Defendant's property described above and to use the walkway under the Jefferson Street bridge to attend the festival located on the east and west bank of the Rock River.

10. On August 31, 1990, the Defendant, ROCKFORD PARK DISTRICT, provided supplemental security personnel within the fenced festival grounds located on the west and east side of the Rock River to protect festival attendees including RON BURLEY from rowdy, belligerent and quarrelsome individuals.

11. That the Defendant, ROCKFORD PARK DISTRICT, did not provide security personnel in the carnival area or on the walkway under the Jefferson Street Bridge on the evening of August 31, 1990.

12. That before the above-described date there were previous instances where members of the public, who attended the 'ON THE WATERFRONT' festival, were assaulted and beaten by groups of teenage boys near the above-described carnival area in and around the Riverview Ice House at 324 North Madison Street, Rockford, Illinois; which carnival area is owned and maintained by the Defendant, ROCKFORD PARK DISTRICT.

13. That before August 31, 1990, the Defendant knew that at previous 'ON THE WATERFRONT' festivals groups of rowdy teenage boys had frequented the carnival area located near the Riverview Ice House described above which is outside the festival grounds and had gotten into fights and injured members of the public attending the Defendant's carnival and festival.

14. That on the evening of August 31, 1990, within a short time of the attack on RON BURLEY described below, a group of teenage boys, while on the festival grounds behind the Rockford Public Library, attacked and beat up a young boy attending the festival.

15. That on August 31, 1990, Ron Burley, an invitee of the Defendant's festival, was walking east on the walkway under the Jefferson Street Bridge toward the carnival area when he was, without cause or provocation, assaulted and beaten, sustaining serious and permanent injuries, by a group of teenage boys who did not display festival buttons and who had congregated on the walkway which was dimly lit.

16. That at the above-described time and place the Defendant, ROCKFORD PARK DISTRICT, by its agents and employees, was negligent in one or more of the following ways:

   a. Failed to station security personnel on the walkway under the Jefferson Street bridge and in the carnival area when it knew or should have known that there may be at-

tacks and beatings by belligerent teenage boys on members of the public who were attending the festival;

b. Failed to anticipate and foresee that festival attendees in the carnival area and walkway area, including the Plaintiff, RON BURLEY, may be beaten by roving groups of teenage boys when it knew or should have known of previous attacks on festival attendees;

c. Negligently stopped and then released the same teenage boy who had beaten and attacked a youngster behind the Rockford Public Library shortly before attacking the Plaintiff on the walkway under the Jefferson Street Bridge;

d. Negligently approved the plan or design of the walkway which created a condition which the Defendant knew or should have know[n] was not reasonable [*sic*] safe, namely failing to provide for a railing in the middle of the 10 feet wide walkway to separate eastbound and westbound pedestrian traffic and avoid the congregation or loitering of groups of teenage boys on the walkway who were likely to harass or attack pedestrians;

e. Failed to protect the Plaintiff from attacks by a group of belligerent boys when the Defendant knew or should have known of previous attacks in the area and where the Defendant had voluntarily undertaken to protect people in the vicinity of the carnival area from such attacks; and

f. Negligently provided poor or dim illumination on the walkway when the Defendant knew or should have known of the unsafe condition before the injury and which condition increased the likelihood of the beating on the Plaintiff who could not clearly see his attackers;

17. That as a direct and proximate result of one or more of the above-described negligent acts, the Plaintiff was injured, incurred and will incur medical and hospital expenses, suffered and will suffer, has been and will be restricted in pursuing his usual activities and affairs.''

Attached to the amended complaint as exhibit A is a written agreement between the City of Rockford and the Park District. The agreement provides, among other things, that the Park District "shall be solely responsible for construction and continued maintenance of the walkway and lighting project, and shall provide sufficient security protection, periodic inspection, clean-up as required, and maintain liability insurance *** as Park District may, from time to time, deem appropriate.''

The Park District filed a motion to dismiss count II of the amended complaint. The bases of the motion to dismiss were sections 2—103, 3—108, and 4—102 of the Local Governmental and Governmental Employees Tort Immunity Act (Act) (Ill. Rev. Stat. 1989, ch. 85, pars. 2—103, 3—108, 4—102). Following a hearing on the Park District's motion, the court, without stating its reasons, dismissed count II with prejudice. The court further found, pursuant to Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)), that there was no just reason to delay enforcement or appeal of its order, and the plaintiff filed this timely appeal.

The plaintiff raises the following contentions on appeal. First, he argues that the Park District owed him a duty to protect him from the criminal attack of a third person because he alleged that he was a business invitee of the festival and that the Park District knew of prior instances where attendees of the festival had been injured in fights. Second, he maintains that the Park District had a duty to protect him from criminal attack by virtue of its allegedly having undertaken to provide security at the festival. Third, the plaintiff asserts, relying on section 9—103(c) of the Act (Ill. Rev. Stat. 1989, ch. 85, par. 9—103(c)), that the Park District waived tort immunity by agreeing with the City of Rockford to provide security protection for the walkway. Finally, the plaintiff contends that the Park District owed him a duty to provide adequate illumination on the walkway so as to decrease the likelihood of the plaintiff being attacked by persons he could not clearly see.

Because the circuit court dismissed count II of the complaint with prejudice pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—615), we consider all properly pleaded facts as true. (*People ex rel. Daley v. Datacom Systems Corp.* (1991), 146 Ill. 2d 1, 11.) A cause of action should not be dismissed on the pleadings unless it clearly appears that no set of facts can be proved which will entitle the plaintiff to recover. *Datacom Systems Corp.*, 146 Ill. 2d at 11.

We begin our analysis by noting that the circuit court order does not indicate the specific basis upon which the court dismissed count II. Even if it did, we are not bound to accept the reasons given by the court, and its judgment may be sustained upon any ground warranted, regardless of whether it was relied on by the court and regardless of whether the reason given by the court was correct. (*Material Services Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382, 387.) On appeal, the plaintiff's first two contentions focus on the duty of the Park District to protect him while at the festival. In the first

instance, he maintains the Park District had a duty arising out of his status as a business invitee at the festival. The plaintiff's second contention is premised upon a duty created by the Park District's alleged voluntary undertaking to provide security at the festival.

■■ The plaintiff's first two contentions are faulty, however, as they both rely on an alleged duty to protect the plaintiff from attack while at the festival. Although alleging that the plaintiff had purchased an admission button entitling him to access the festival, the plaintiff's complaint does not allege that the attack occurred on the festival grounds. In fact, the only reasonable inference to be drawn from the complaint, even when viewing it in a light most favorable to the plaintiff, is that the walkway was *not* part of the festival *and* did *not* require a button to access or use it. Thus, any attempt by the plaintiff to impose a duty upon the Park District to protect him while on the walkway must necessarily fail to the extent it is premised upon a duty owed to him while at the festival.

Furthermore, there are no allegations in count II which remotely suggest that the Park District was acting in a proprietary rather than governmental capacity in its operation and maintenance of the walkway. Nor are there any allegations that the plaintiff was a business invitee on the walkway such that the immunity of the Act would not apply. (See *Burdinie v. Village of Glendale Heights* (1990), 139 Ill. 2d 501; *Comastro v. Village of Rosemont* (1984), 122 Ill. App. 3d 405.) Consequently, tort immunity applies to shield the Park District from liability based on the criminal conduct of a third party directed at the plaintiff absent some allegation in count II that some other exception to tort immunity applies in this case.

■■ We next address the plaintiff's contention that pursuant to section 9—103(c) of the Act the Park District waived tort immunity by agreeing to provide security protection for the walkway. Section 9—103(c) provides in pertinent part:

"Public entities which are individually or jointly self-insured shall be entitled to assert all of the immunities provided by this Act or by common law or statute on behalf of themselves or their employees unless the local public entities shall elect by action of their corporate authorities or specifically contract to waive in whole or in part such immunities." Ill. Rev. Stat. 1989, ch. 85, par. 9—103(c).

The parties do not cite, nor does our research reveal, any case interpreting or applying the above-quoted language regarding contractual waiver of tort immunity. Nevertheless, we interpret the plain language of section 9—103(c) to require a contractual provision

*specifically* waiving all or part of a governmental entity's tort immunity before such waiver will be found to exist. In this case, the written agreement merely provides that the Park District will supply security protection for the walkway. It does not expressly or impliedly waive any tort immunity or even mention tort immunity. Moreover, the mere agreement to provide security protection cannot be construed as a waiver of tort immunity absent some specific provision to that effect. The agreement to provide security protection does not waive the Park District's tort immunity pursuant to section 9—103(c) of the Act.

We turn then to the plaintiff's last contention that the Park District owed him a duty to provide adequate lighting to prevent him from being attacked by a third party he could not clearly see. The plaintiff relies on *Baran v. City of Chicago Heights* (1969), 43 Ill. 2d 177, in support of this contention.

In *Baran*, the supreme court stated the long-recognized proposition that where a municipality undertakes to provide lights it is liable for injuries which result from deficient or inadequate ones. (43 Ill. 2d at 180.) When a city creates a hazardous condition and someone is injured as a consequence, it must respond in damages. (43 Ill. 2d at 181.) We do not believe *Baran* supports the plaintiff's position in this case.

First, we can find no case which has found a municipality liable for injuries suffered by a plaintiff at the hands of a criminal which has applied the principle enunciated in *Baran*. Rather, every case which sets forth or applies the principles in *Baran* has done so in the context of a vehicular-related injury arising out of the use of a highway, street or appurtenance thereto.

Second, this case is distinguishable from *Baran* and cases similar to it because here the plaintiff's injuries resulted from the criminal conduct of a third party. This is significantly different from the *Baran* situation where the inadequacy or deficiency of the lighting resulted in the injuries. (*Cf. Parsons v. Carbondale Township* (1991), 217 Ill. App. 3d 637, 646 (common law recognizes that where danger is created by actions of others and not the municipality, the municipality is not liable for negligence); *Harding v. Chicago Park District* (1975), 34 Ill. App. 3d 425, 429-30 (same proposition).) We choose not to extend *Baran* to circumstances where the plaintiff's injuries are caused by the criminal acts of a third party.

Furthermore, were we to extend *Baran* to this type of case, we would effectively abrogate the tort immunity provided by section 4—102 of the Act (Ill. Rev. Stat. 1989, ch. 85, par. 4—102). Section

4—102 immunizes a governmental entity for its "failure to provide adequate police protection or service, failure to prevent the commission of crimes, failure to detect or solve crimes, and failure to identify or apprehend criminals." (Ill. Rev. Stat. 1989, ch. 85, par. 4—102.) To hold a governmental entity liable for the criminal acts of others due to its failure to provide adequate or effective lighting on its streets, sidewalks or walkways would be contrary to the legislative intent contained in the Act. The Park District in this case remains immune under section 4—102 of the Act notwithstanding the plaintiff's allegations that it failed to provide adequate lighting which resulted in his being injured by the criminal conduct of a third party.

For the foregoing reasons, we affirm the order of the circuit court of Winnebago County dismissing count II of the plaintiff's first amended complaint.

Affirmed.

UNVERZAGT and DOYLE, JJ., concur.