LINDA LAWSON, as Mother and Special Adm'r of the Estate of Delondyn Lawson, Deceased, Plaintiff-Appellant, v. THE CITY OF CHICAGO *et al.*, Defendants-Appellees.

First District (5th Division)   Nos. 1—93—2544, 1—93—4359 cons.

Opinion filed March 22, 1996.

Edward R. Vrdolyak, of Chicago (Everett J. Cygal and Peter J. Woods, of counsel), for appellant.

Patricia J. Whitten, of Chicago (William A. Morgan, of counsel), for appellee Chicago Board of Education.

Susan S. Sher, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, Patricia T. Bergeson (argued), and Meera Werth, Assistant Corporation Counsel, of counsel), for appellee City of Chicago.

JUSTICE GORDON delivered the opinion of the court:

The plaintiff, Linda Lawson, as mother and special administrator of the estate of Delondyn Lawson, filed the instant wrongful death and negligence action against the defendants, the City of Chicago and Police Superintendent Matthew Rodriguez (the City)[1] and the Chicago Board of Education (the Board), seeking to recover damages resulting from the death of her son, Delondyn, who was shot by a fellow student on the premises of Tilden High School (Tilden). Counts I, II and III against the City were dismissed pursuant to section 2—619 of the Code of Civil Procedure (the Code) (735 ILCS 5/2—619 (West 1992)), based on the City's tort immunity and lack of maintenance, ownership or control of the subject property. Counts IV, V and VI against the Board were dismissed pursuant to section 2—615 of the Code (735 ILCS 5/2—615 (West 1992)) for failure to state a cause of action. The plaintiff filed an amended complaint against the Board consisting of three counts that closely resembled counts IV, V and VI

---

[1]Chicago Police Superintendent Matthew Rodriguez and the City were jointly represented; all motions filed by the City were jointly filed with Superintendent Rodriguez; and all orders applicable to the City were applicable to Superintendent Rodriguez. Unless otherwise noted, the term "City" will be used in this opinion to refer to the City and Superintendent Rodriguez.

of the original complaint. That amended complaint also was dismissed pursuant to section 2—615 of the Code. The plaintiff filed separate appeals from both dismissals, and those appeals were consolidated by motion in this court.

Plaintiff's multicount complaint sought recovery against the City and the Board based on theories of premises liability, voluntary undertaking, and special duty. Count I of the original complaint against the City and count I of the first amended complaint against the Board alleged, respectively, that the City and the Board owned, operated, maintained and controlled Tilden and had a duty to maintain it and not allow injuries to persons lawfully on its premises. Those counts further alleged that the City and Board negligently permitted persons who were armed and dangerous on the premises and failed to operate or use metal detectors on November 20, 1992, the day the decedent was shot.[2] Count II of the respective complaints alleged that the City and Board were responsible for the safety and protection of all individuals lawfully on the premises and that, by placing metal detectors at the school, had voluntarily undertaken to provide special protection to prevent criminal attacks from third persons. Count III of the complaint and first amended complaint alleged that the City and the Board, respectively, owed a special duty to the decedent because the decedent was within their direct and immediate control and because the defendants were uniquely aware of a particular danger or risk to the decedent. Those counts also alleged that, in response to the alleged danger, the defendants purchased metal detectors but omitted to use the detectors on November 20, 1992, the day the decedent was shot.

Plaintiff's first amended complaint against the Board differed from counts IV, V and VI of the original complaint primarily in allegations concerning Joseph White, the student who shot Delondyn. The amended complaint alleged that Joseph White, who was on suspension from Tilden, "had a violent and belligerent disposition" and had been arrested for criminal trespass at Tilden on October 28, 1992, and for gambling on school grounds on November 16, 1992. It further alleged that the Board had "actual or constructive knowledge of the potential danger of student's, Joseph White, propensity to violate both the law and school regulations" and negligently permitted White, who was armed and dangerous, to enter the school premises on November 20, 1992. An additional difference between

---

[2]The use of metal detectors to conduct random, mass searches of students was upheld as a reasonable search under the fourth amendment in *People v. Pruitt*, 278 Ill. App. 3d 194 (1996).

the original and amended complaints concerned allegations in the latter regarding the presence of metal detectors at Tilden. The latter complaint stated the detectors were operational and used on an intermittent basis but were not in use on the day Delondyn was killed. The amended complaint also alleged that the Board's installation of the metal detectors at Tilden was an undertaking to provide greater protection to students at that school rather than at other schools generally.

The City moved to dismiss plaintiff's counts I, II and III based on the fact that it neither owned nor controlled Tilden High School or the metal detectors therein. In support thereof, the City relied upon the Board's answer to the City's request to admit facts in which the Board admitted ownership of the school property and of the metal detectors installed thereon. The City also argued that it was immune from liability for failure to make an arrest (745 ILCS 10/4—107 (West 1992)) and for failure to provide adequate police protection, to prevent the commission of crimes, to detect or solve crimes, and to identify or apprehend criminals (745 ILCS 10/4—102 (West 1992)). Finally, the City argued it owed no special duty to the plaintiff's decedent because the City did not exercise control over the decedent or create the perilous condition. The trial court granted the City's motion on all three counts; and the plaintiff appeals with respect to counts II and III only.

The Board's motion to dismiss plaintiff's first amended complaint for failure to state a cause of action argued that plaintiff's premises liability theory contained insufficient allegations of a condition that gave rise to liability. The motion also argued that the Board's failure to operate the metal detectors on the day the decedent was shot was not a breach of its duty with respect to its voluntary undertaking to provide metal detectors since, as alleged by the plaintiff, the voluntary undertaking was to provide metal detectors on an intermittent and random basis, which it had done. As to the special duty count, the Board argued that the plaintiff did not allege sufficient facts of a special relationship between the Board and the decedent to elevate decedent's status to a position higher than that of the general public. The trial court dismissed plaintiff's first amended complaint, finding the complaint did not allege sufficient facts of premises liability or special duty; and the plaintiff appeals from that dismissal as well.

The issues presented for review are whether the City is liable in tort for a voluntary undertaking; whether the City owed a special duty to the decedent; and whether the plaintiff's first amended complaint stated causes of action against the Board for premises liability, voluntary undertaking and special duty.

■ A motion to dismiss pursuant to section 2—615 of the Code attacks the legal sufficiency of the complaint whereas a section 2—619 motion raises defects or defenses which negate a plaintiff's cause of action completely or refute crucial conclusions of law or conclusions of material fact that are unsupported by allegations of specific fact. *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 639 N.E.2d 1282 (1994). In ruling on the latter motion, the court may consider external submissions of the parties. *American Health Care Providers, Inc. v. County of Cook*, 265 Ill. App. 3d 919, 638 N.E.2d 772 (1994). Motions to dismiss pursuant to either section of the Code admit all well-pleaded facts together with all reasonable inferences which can be gleaned from those facts. *E.g., Calloway v. Kinkelaar*, 168 Ill. 2d 312, 659 N.E.2d 1322 (1995); *Spillyards v. Abboud*, 278 Ill. App. 3d 663, 668-69 (1996); *Winfrey v. Chicago Park District*, 274 Ill. App. 3d 939, 654 N.E.2d 508 (1995). They do not admit conclusions of law or conclusions of fact unsupported by allegations of specific fact. *American Health Care Providers, Inc. v. County of Cook*, 265 Ill. App. 3d 919, 638 N.E.2d 772. Appellate review of a dismissal pursuant to either motion is *de novo. Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 619 N.E.2d 732 (1993).

## I. DISMISSAL OF CITY

■ With respect to plaintiff's causes of action against the City, it is well settled under the common law public duty rule that a municipality is not liable in tort when performing customary duties toward the public at large (*Burdinie v. Village of Glendale Heights*, 139 Ill. 2d 501, 565 N.E.2d 654 (1990)) or for failing to provide police protection or to prevent the tortious or unlawful acts of others (*Huey v. Town of Cicero*, 41 Ill. 2d 361, 243 N.E.2d 214 (1968); *Santy v. Bresee*, 129 Ill. App. 3d 658, 473 N.E.2d 69 (1984)). That common law rule is now embodied in the legislative enactment of the Local Governmental and Governmental Employees Tort Immunity Act (the Tort Immunity Act) (745 ILCS 10/1—101 *et seq.* (West 1992)). Section 4—102 of the Tort Immunity Act provides in pertinent part:

> "Neither a local public entity nor a public employee is liable for failure to establish a police department or otherwise provide police protection service or, if police protection service is provided, for failure to provide adequate police protection or service, failure to prevent the commission of crimes, failure to detect or solve crimes, and failure to identify or apprehend criminals." 745 ILCS 10/4—102 (West 1992).

It is the plaintiff's contention that, notwithstanding the Tort Immunity Act, the City is liable for its voluntary undertaking to operate the metal detectors and in failing to operate them on the day De-

londyn was shot. See Restatement (Second) of Torts § 323 (1965).[3] In support of this contention, the plaintiff relies on *Cross v. Wells Fargo Alarm Services*, 82 Ill. 2d 313, 412 N.E.2d 472 (1980), *Siklas v. Ecker Center for Mental Health, Inc.*, 248 Ill. App. 3d 124, 617 N.E.2d 507 (1993), and *Comastro v. Village of Rosemont*, 122 Ill. App. 3d 405, 461 N.E.2d 616 (1984). However, *Cross* and *Siklas* are not relevant to the case at bar since those cases did not involve the Tort Immunity Act. See *Rascher v. City of Champaign*, 262 Ill. App. 3d 592, 595, 634 N.E.2d 1121, 1122 (1994) ("[*Cross*] did not involve the question of governmental tort immunity and, therefore, lends no support to plaintiff's position" that city's voluntary undertaking overrides Tort Immunity Act). The Tort Immunity Act was inapplicable in *Comastro* as well, not because of the absence of an undertaking by a governmental entity but because the governmental entity was engaged in a nongovernmental function and thus was held to the same standard as a private citizen.

■ Here, the City was alleged to have engaged in a governmental function, the providing of police protection to the students at Tilden High School by its control, maintenance and operation of metal detectors at Tilden. In accordance with section 4—102 of the Tort Immunity Act, the City was immune from liability for any alleged failure to provide adequate police protection or to prevent the commission of the alleged crime. The City's undertaking to operate the metal detectors does not override the Tort Immunity Act nor does it prevent that statutory immunity from attaching to immunize the City from liability for any alleged negligence in the performance of that function. See *Rascher v. City of Champaign*, 262 Ill. App. 3d 592, 634 N.E.2d 1121; *Hill v. Chicago Housing Authority*, 233 Ill. App. 3d 923, 599 N.E.2d 1118 (1992); *Burley v. On the Waterfront, Inc.*, 228 Ill. App. 3d 412, 419, 592 N.E.2d 623, 628 (1992) (extending the voluntary undertaking theory to municipality would "effectively abrogate the tort immunity provided by section 4—102 of the Act"). Therefore, count II of plaintiff's complaint alleging a voluntary undertaking by the City was properly dismissed based on the City's statutory tort immunity.

The plaintiff next contends that the trial court erred in dismiss-

---

[3]Unlike the Board of Education, the City of Chicago did not challenge the sufficiency of the pleading with respect to plaintiff's voluntary undertaking count. Instead, the City apparently chose to rest upon its affirmative defense of immunity. Consequently, while we discuss the sufficiency of plaintiff's voluntary undertaking allegations with respect to the Board in part IIB of this opinion, we do not address that issue with regard to the City.

ing count III of her complaint against the City since that count alleged the special duty exception to the Tort Immunity Act. The plaintiff argues that that count should not have been dismissed since the City admitted the factual sufficiency of her special duty allegations by filing a section 2—619 motion rather than a section 2—615 motion to dismiss for failure to state a cause of action.

■ While statutory immunity is an affirmative matter that can be raised in a section 2—619 motion (*Midwest Bank & Trust Co. v. Village of Lakewood*, 113 Ill. App. 3d 962, 447 N.E.2d 1358 (1983)) a challenge to the legal sufficiency of a complaint should be made pursuant to section 2—615 of the Code of Civil Procedure.[4] Both motions can be raised simultaneously under the Code. 735 ILCS 5/2—619.1 (West 1992). Thus, to the extent that the City's motion did attack the sufficiency of the plaintiff's special duty allegations and argued that the complaint was insufficient in its failure to allege that the City exercised control over the decedent or created a perilous condition, it may properly be considered a section 2—615 motion as well as a section 2—619 motion. Moreover, a motion pursuant to either provision of the Code does not admit conclusions of law or conclusions of fact unsupported by allegations of specific fact. As will be discussed below, plaintiff's special duty allegations were conclusory in fact and law.

■ The special duty exception, judicially created as an exception to the common law public duty rule, operates as an exception to the Tort Immunity Act as well. *Calloway v. Kinkelaar*, 168 Ill. 2d 312, 659 N.E.2d 1322 (1995); *Doe v. Calumet City*, 161 Ill. 2d 374, 641 N.E.2d 498 (1994) (special duty exception is exception to common law public duty rule and to Tort Immunity Act).[5] In accordance with the special duty exception, a municipality is not immune from tort li-

---

[4]As noted in Justice Freeman's dissenting opinion in *Calloway v. Kinkelaar*, 168 Ill. 2d 312, 331-32, 659 N.E.2d 1322, 1331 (1995) (Freeman, J., dissenting), governmental tort immunity is "affirmative matter" upon which a section 2—619(a)(9) motion may be grounded. He also recognized, however, that a section 2—615 pleading-based motion would have been better suited to negate liability based upon the Tort Immunity Act than the section 2—619 fact motion that had been filed by the defendants in that case. Justice Freeman concluded nevertheless that, since there was no question of fact, the appeal could be disposed of if the court found that as a matter of law the defendants were immune from liability.

[5]Two dissenting opinions in two recent Illinois Supreme Court decisions have questioned whether the special duty exception continues as a viable doctrine despite the cessation of the public duty rule. See *Calloway v. Kinkelaar*, 168 Ill. 2d 312, 333-42, 659 N.E.2d 1322, 1333-36 (1995) (Freeman, J., dissenting) (recognizing conflicting supreme court characterizations of the

ability where a special relationship exists between the municipality or its agent and the plaintiff that creates a duty different from the duty owed to the general public. *E.g., Doe v. Calumet City*, 161 Ill. 2d 374, 641 N.E.2d 498; *Burdinie v. Village of Glendale Heights*, 139 Ill. 2d 501, 565 N.E.2d 654 (1990). The affirmative exercise of care or custody by the municipality's agent over the individual elevates that person's status beyond that of a member of the public at large and transforms the general citizen into an object of special concern. *Thames v. Board of Education*, 269 Ill. App. 3d 210, 645 N.E.2d 445 (1994); *Santy v. Bresee*, 129 Ill. App. 3d 658, 473 N.E.2d 69 (1984). Illinois courts have established four requirements or elements to the special duty exception. They are: (1) the municipality must be uniquely aware of the particular danger or risk to which the plaintiff is exposed; (2) there must be specific acts or omissions on the part of the municipality; (3) the specific acts must be affirmative or willful in nature; and (4) the injury must occur while the plaintiff is under the direct and immediate control of employees or agents of the municipality. *E.g., Doe v. Calumet City*, 161 Ill. 2d 374, 641 N.E.2d 498; *Leone v. City of Chicago*, 156 Ill. 2d 33, 619 N.E.2d 119 (1993); *Burdinie v. Village of Glendale Heights*, 139 Ill. 2d 501, 565 N.E.2d 654; *Bell v. Village of Midlothian*, 90 Ill. App. 3d 967, 414 N.E.2d 104 (1980).

■ The City argues that the plaintiff's special duty count was properly dismissed because the plaintiff did not allege that the City was uniquely aware of the particular danger or risk to the decedent or that the decedent was under the direct and immediate control of the City's agent. We agree. The plaintiff's special duty count alleged that the City "had a special relationship and duty with *** the decedent, above and beyond any duty owed to the general public." That count also alleged that the City was "uniquely aware of the particular danger or risk to which all persons lawfully on the premises of the *** high school were exposed, including the decedent." These allegations are conclusory and nonspecific. They neither identify the type of danger or risk to which the decedent was exposed nor do they set forth specific facts, such as knowledge and control by the City, upon which to establish a special relationship. Such conclusory allegations are never admitted as true for purposes of a section 2—615 or 2—619 motion to dismiss.

---

special duty exception; concluding special duty exception, as exception to common law public duty rule that ceased to exist upon constitutional abolishment of sovereign immunity in 1970, also ceased to exist); see also *Leone v. City of Chicago*, 156 Ill. 2d 33, 47, 619 N.E.2d 119, 126 (1993) (Bilandic, J., dissenting) (special duty exception is exception to public duty rule but not to statutory tort immunity).

Moreover, it does not appear that the plaintiff could ever plead sufficient facts of knowledge or unique awareness. As noted in our earlier opinion of *Thames v. Board of Education*:

> "[C]ases interpreting the unique awareness element of the 'special duty' exception provide a narrow interpretation of that requirement. To establish that element, facts must be alleged that the defendant had actual knowledge of a *particular risk* to the *particular plaintiff.*" (Emphasis original.) 269 Ill. App. 3d at 216, 645 N.E.2d at 450.

See also *Burdinie v. Village of Glendale Heights*, 139 Ill. 2d 501, 565 N.E.2d 654; *Huey v. Town of Cicero*, 41 Ill. 2d 361, 243 N.E.2d 214 (1968); *Arizzi v. City of Chicago*, 201 Ill. App. 3d 368, 559 N.E.2d 68 (1990); *Fryman v. JMK/Skewer, Inc.*, 137 Ill. App. 3d 611, 484 N.E.2d 909 (1985). In *Thames* we held that allegations that the defendant school board knew that weapons were routinely brought into the schools did not establish unique awareness of the plaintiff's peril but rather a generalized knowledge of possible peril to all students. Without specific allegations that the defendant was aware of a specific threat to a particular student by another particular student, we held that the minor plaintiff was not "transformed from a general citizen into an object of special concern." *Thames,* 269 Ill. App. 3d at 216, 645 N.E.2d at 450. Here, as in *Thames*, the plaintiff did not allege knowledge of a specific danger to the decedent that was different from others on the premises. In fact, the plaintiff's complaint admitted that the same risk of danger existed to all persons on the premises. These allegations of the City's awareness of a general danger or risk to all persons on the premises are not sufficient to meet the unique awareness test.

Plaintiff's complaint also is deficient in its failure to allege that the decedent was under the direct and immediate control of the City. The control element to the special duty exception arises when the defendant initiates the circumstances which create the dangerous situation. *Burdinie v. Village of Glendale Heights*, 139 Ill. 2d 501, 565 N.E.2d 654. "The determinative factor for a finding of direct and immediate control is whether the public official was responsible for the occurrence which gave rise to the need for protection." *Thames,* 269 Ill. App. 3d at 217, 645 N.E.2d at 451. Here, again, the complaint alleged in a factually conclusive manner that "all persons lawfully on the premises of said high school, including the decedent, were under the immediate control of the Defendant, City of Chicago." Plaintiff's allegation of control is not well pleaded; and her factual conclusion as to control is not accepted as true for purposes of the City's motion to dismiss. Moreover, as with respect to the element of knowledge,

we also find that the plaintiff could not plead other factual allegations to establish the control element of the special duty exception. Any control that the City exercised with respect to the decedent was no different from the control exercised over the entire student population and all other individuals lawfully on the premises. We further cite to our decision to *Thames* as follows:

"[T]he pivotal fact in the control analysis is whether the public entity or its employees were responsible for the occurrence which gave rise to the need for protection. [Citation.] While the plaintiff contends that the Board was responsible for her injuries because it failed to develop a weapons interdiction procedure which would have led to the confiscation of the gun which caused her injury, the actual failure of the Board was its failure to protect the minor plaintiff as well as all of the students enrolled in the Chicago public school system from injuries caused by weapons. Direct control does not exist when a failure to protect is alleged unless a corresponding allegation is made that the entity or its employee initiated the circumstances creating the dangerous situation for the particular plaintiff. Here the dangerous condition was not initiated by the Board or one of its employees but by [named student's] bringing a handgun to school. This act created a condition of peril not just for the minor plaintiff but for all individuals present at Orr High School on the day of the shooting. Under the alleged facts of this case, we see little difference [from] a city's immunity from liability for a failure to protect an individual, who is a member of the general public, from *** the Board's failure to protect the minor plaintiff, who is a member of the student population." 269 Ill. App. 3d at 218-19, 645 N.E.2d at 452.

As the special duty exception does not apply to the City's failure to protect the public at large so, too, it should not apply to the City's failure to protect the decedent, who was a member of an albeit smaller group (those lawfully on the premises at Tilden), but a group nonetheless. Thus, since the plaintiff's special duty count against the City contained insufficient allegations to establish unique awareness or immediate control, that count was properly dismissed.

## II. DISMISSAL OF THE BOARD

### A. PREMISES LIABILITY

●7 As noted above, plaintiff's first amended complaint against the Board of Education contained three counts that alleged premises liability, voluntary undertaking and special duty, respectively. All three counts sought to recover for the failure of the Board to protect plaintiff's decedent from the criminal acts of a fellow student. The complaint was dismissed in its entirety pursuant to the Board's sec-

tion 2—615 motion to dismiss for failure to state a cause of action. The Board did not raise by way of affirmative defense any immunities it may have had under the Tort Immunity Act nor did the Board raise any immunity issues in this appeal. Therefore, our review of the instant case is limited to the sufficiency of the complaint, and we do not address the impact of the immunities enumerated in the Tort Immunity Act upon plaintiff's ability to recover.

■ In support of her premises liability count, the plaintiff cites section 3—102(a) of the Tort Immunity Act, which codified the common law duty of public entities to maintain their property in a reasonably safe condition. That section articulates the duty to which the subsequently delineated immunities in the Tort Immunity Act apply. See *Ramirez v. Village of River Grove*, 266 Ill. App. 3d 930, 641 N.E.2d 7 (1994); *Thompson v. Cook County Forest Preserve District*, 231 Ill. App. 3d 88, 595 N.E.2d 1254 (1992); *Horrell v. City of Chicago*, 145 Ill. App. 3d 428, 495 N.E.2d 1259 (1986). In accordance with that provision, a public entity is liable for its failure to exercise ordinary care to maintain its property in a reasonably safe condition if it has actual or constructive notice of the existence of a condition that is not reasonably safe in reasonably adequate time before the injury occurs. 745 ILCS 10/3—102(a) (West 1992).

Generally, the loss inflicted upon the premises must be a direct result of the condition of the premises and must have a causal relation or other connection with the property itself. *Pippin v. Chicago Housing Authority*, 58 Ill. App. 3d 1029, 374 N.E.2d 1055 (1978), *aff'd*, 78 Ill. 2d 204, 399 N.E.2d 596 (1979); *Smith v. Chicago Housing Authority*, 36 Ill. App. 3d 967, 344 N.E.2d 536 (1976). There can be no premises liability for criminal acts of third persons upon the premises where such acts are not prompted or facilitated by conditions of the premises (*Smith v. Chicago Housing Authority*, 36 Ill. App. 3d 967, 344 N.E.2d 536 (condition of premises did not contribute to death of tenant fatally shot in public housing project); *Stribling v. Chicago Housing Authority*, 34 Ill. App. 3d 551, 340 N.E.2d 47 (1975) (loss resulting from criminal acts directly related to condition of property and existence of two adjacent vacant apartments)) or where the owner has no unique knowledge regarding the possibility of future criminal acts (*Popp v. Cash Station, Inc.*, 244 Ill. App. 3d 87, 613 N.E.2d 1150 (1992) (no duty to prevent foreseeable attacks by third parties where defendant has no unique knowledge regarding possible future attacks); accord *Geimer v. Chicago Park District*, 272 Ill. App. 3d 629, 650 N.E.2d 585 (1995) (no duty upon park district to anticipate and prevent intentional misconduct of football player absent unique knowledge)). While the possessor of land has an obligation to

maintain and repair it, there is no broad duty to police it even where some form of notice of criminal activity may have been provided. *Pippin v. Chicago Housing Authority*, 58 Ill. App. 3d 1029, 1035, 374 N.E.2d 1055 (1978), quoting *Trice v. Chicago Housing Authority*, 14 Ill. App. 3d 97, 100, 302 N.E.2d 207, 209 (1973) (" '[T]he landlord's control of the common areas is associated with the obligation to maintain and repair, rather than with a duty to police' "); see *Rowe v. State Bank*, 125 Ill. 2d 203, 531 N.E.2d 1358 (1988) (rejecting broad duty upon landlord to protect tenants from foreseeable criminal acts committed by third parties on the premises). See also *Ziemba v. Mierzwa*, 142 Ill. 2d 42, 566 N.E.2d 1365 (1991) (no duty upon landowner to guard against negligence of third parties where that negligence unrelated to condition on the landowner's property).

■ Here, the plaintiff asserted liability by the Board due to its allowance of Joseph White upon the premises with a gun, its failure to take any action where it "knew or should have known of the likelihood of harm being done to persons lawfully on said premises," and its failure to operate or use metal detectors on the day of the shooting. These allegations do not suffice to create a cause of action against the Board based on common law premises liability. First, the alleged loss bore no relation to the physical condition of the premises nor did a condition on the premises contribute in any way to the loss sustained. See *Smith v. Chicago Housing Authority*, 36 Ill. App. 3d 967, 344 N.E.2d 536. The loss was caused by Joseph White's criminal conduct, his unauthorized presence at Tilden and his illegal possession of a gun. The plaintiff did not allege that the Board facilitated this presence or caused it to occur. Moreover, while the plaintiff may argue that the condition on the premises was the nonuse of metal detectors on the day of the shooting, we disagree. It cannot be said that the random use of the metal detectors by the Board created the condition that facilitated the criminal activity. See, *e.g.*, *Duncavage v. Allen*, 147 Ill. App. 3d 88, 497 N.E.2d 433 (1986) (criminal activity facilitated by high weed, unlighted yard, unlockable window and ladder which landlord stored in yard adjacent to plaintiff's apartment); *Stribling v. Chicago Housing Authority*, 34 Ill. App. 3d 551, 340 N.E.2d 47 (existence of unsecured vacant apartments through which burglar gained entry into plaintiff's apartment). The random use of the metal detectors was a security measure undertaken by the Board to prevent crime rather than facilitate it.

Second, plaintiff's complaint insufficiently pleads premises liability due to its failure to allege specific facts demonstrating actual or constructive knowledge of the danger. In an attempt to meet the notice requirements of the Tort Immunity Act, the plaintiff alleged

that the Board "had actual or constructive knowledge of the potential danger of student's, Joseph White, propensity to violate both the law and school regulations during school hours while a student at Tilden High School" presumably based upon the fact that Joseph White had been arrested for criminal trespass upon the premises at Tilden and for gambling on school grounds. The complaint did not allege, however, that the Board had actual knowledge of Joseph White's armed presence on the premises on the day of decedent's shooting nor did it allege that the Board had constructive knowledge based on the occurrence of any prior incidents where Joseph White was found to have been carrying a gun while on the school premises. While the complaint alleged that Joseph White had been arrested at Tilden on two prior occasions for criminal trespass and gambling, facts which would support a presumption that Tilden's personnel were aware of White's prior impermissible presence, these incidents cannot support allegations that Tilden personnel knew that he presented any threat to the physical safety of all individuals intended and permitted to use Tilden's facilities.

Plaintiff's other allegation pertaining to knowledge, that the Board "knew or should have known of the likelihood of harm being done to persons lawfully on said premises," also is insufficient. That allegation is overly broad, nonspecific and conclusory. The complaint is unclear in its identification of the type of harm that existed and how the safety of the individuals lawfully upon Tilden's premises was in fact threatened. The complaint also failed to allege any particularized facts of prior incidents that created a risk of harm to establish knowledge by the Board of that harm. Even if one were to presume that the harm sought to be alleged was the possession of weapons by students upon school property, there were no allegations identifying prior shootings or confiscations of weapons at Tilden. See *Marshall v. David's Food Store*, 161 Ill. App. 3d 499, 515 N.E.2d 134 (1987) (exhibit to complaint listing 14 specific instances of criminal activity on premises). Moreover, even assuming the plaintiff could be more specific with respect to prior incidents involving the presence of weapons on the premises, such allegations would not establish the Board's unique awareness, the basis upon which premises liability rests. See *Geimer v. Chicago Park District*, 272 Ill. App. 3d 629, 650 N.E.2d 585; *Popp v. Cash Station, Inc.*, 244 Ill. App. 3d 87, 613 N.E.2d 1150 (basis of premises liability rests on owner's superior knowledge of danger). Thus, since the plaintiff cannot allege that the Board created or facilitated the condition that caused the loss or that the Board had actual or constructive knowledge of criminal conduct, the plaintiff cannot state a cause of action for premises liability.

## B. VOLUNTARY UNDERTAKING

An exception to the general rule that a landowner owes no duty to protect others from the criminal acts of a third person exists where the landowner voluntarily undertakes to provide security measures. If the owner assumes a duty to protect, that liability is limited, however, by the extent of the undertaking. *E.g., Pippin v. Chicago Housing Authority*, 78 Ill. 2d 204, 399 N.E.2d 596 (1979) (voluntary undertaking limited to using reasonable care in hiring of guard service); *Jackson v. Shell Oil Co.*, 272 Ill. App. 3d 542, 650 N.E.2d 652 (1995) (voluntary undertaking limited to providing secure booth for service station attendant); *Hill v. Chicago Housing Authority*, 233 Ill. App. 3d 923, 599 N.E.2d 1118 (1992) (voluntary undertaking only to protect property not people). That undertaking can never be construed as insurance of absolute protection against crime. *Jackson v. Shell Oil Co.*, 272 Ill. App. 3d 542, 650 N.E.2d 652; *Carrigan v. New World Enterprises, Ltd.*, 112 Ill. App. 3d 970, 446 N.E.2d 265 (1983); *Stelloh v. Cottage 83*, 52 Ill. App. 2d 168, 201 N.E.2d 672 (1964). However, if the landowner performs the undertaking negligently and if the negligence is the proximate cause of the injury, liability can exist. *E.g., Phillips v. Chicago Housing Authority*, 89 Ill. 2d 122, 431 N.E.2d 1038 (1982); *Pippin v. Chicago Housing Authority*, 78 Ill. 2d 204, 399 N.E.2d 596 (1979); *Jackson v. Shell Oil Co.*, 272 Ill. App. 3d 542, 650 N.E.2d 652.

Here, the alleged voluntary undertaking was the Board's installation of metal detectors and its usage of those detectors on an intermittent and random basis. The plaintiff alleged that the Board was negligent in that undertaking by failing to operate the detectors on the day of the shooting.

The Board allegedly undertook to protect against the presence of deadly and dangerous weapons in the decedent's school. The Board provided this protection by the installation of metal detectors and usage of those detectors on a random basis. The complaint alleges that, as a result of its undertaking, the Board became obligated to protect against *any* criminal activity. We disagree. The Board's assumption of that undertaking did not make the Board an insurer against all crime. Rather, the Board became obligated to use reasonable care and not to enhance the risk of danger. See *Cross v. Wells Fargo Alarm Services*, 82 Ill. 2d 313, 412 N.E.2d 472 (1980). See generally Restatement (Second) of Torts §§ 323, 324A (1965).

The only negligence or lack of reasonable care that the plaintiff seemingly attributed to the Board was the Board's random operation of the metal detectors. The plaintiff did not allege that the Board failed to operate the detectors or that there was a pattern to the

operation such that individuals could predict when the metal detectors would be operational so as to create a greater risk of danger at times when it was known that the detectors would not be operated. Absent specific facts to support such a predictability contention, the plaintiff has not alleged any facts showing that the random operation was unreasonable or that it increased the incidence of crime. See *Cross v. Wells Fargo Alarm Services*, 82 Ill. 2d 313, 412 N.E.2d 472. Thus, the plaintiff's voluntary undertaking count fails to state a cause of action.

In affirming the dismissal of this count, we note that the plaintiff, in her brief, sought leave to file an amended complaint should the dismissal of the first amended complaint be affirmed on appeal. A party who brings an appeal from the dismissal of the complaint stands on that complaint and forgoes the right to file an amended complaint. *Ochoa v. Maloney*, 69 Ill. App. 3d 689, 387 N.E.2d 852 (1979); see *Robbins v. City of Madison*, 193 Ill. App. 3d 379, 549 N.E.2d 947 (1990). We note that the plaintiff here did seek leave to file an amended complaint in the court below at the time of the dismissal of the first amended complaint; but, because the plaintiff's appeal against the City was pending in the appellate court at that time, the trial court recommended that the plaintiff bring a simultaneous appeal as to her action against the Board. As a result, the plaintiff did not further pursue her request for leave to amend. Under these circumstances, we see no reason to exercise our equitable powers under Supreme Court Rule 366 (134 Ill. 2d R. 366) to remand this matter to permit the plaintiff the opportunity to replead a cause of action based on the Board's alleged voluntary undertaking since, even if feasible, the amended complaint would fall once the Board pleaded its affirmative defense of immunity pursuant to section 4—102 of the Tort Immunity Act, as fully discussed hereinabove with respect to the City's utilization of that defense to dismiss plaintiff's voluntary undertaking count against the City. See *Rascher v. City of Champaign*, 262 Ill. App. 3d 592, 634 N.E.2d 1121; *Hill v. Chicago Housing Authority*, 233 Ill. App. 3d 923, 599 N.E.2d 1118; *Burley v. On the Waterfront, Inc.*, 228 Ill. App. 3d 412, 592 N.E.2d 623.

## C. SPECIAL DUTY

Plaintiff's final count against the Board alleged that the Board had a special relationship with the decedent and owed a special duty of care. The allegations in this count were nearly identical to the special duty count against the City, discussed in part I of this opinion, with the following exceptions: (1) the count against the Board alleged that the duty owed to the decedent was beyond that owed to the gen-

eral student body at other schools (the count against the City differentiated the duty owed to the decedent from the duty owed to the general public); (2) the count against the Board alleged a specific unique awareness by the Board of "students bringing weapons on school premises"; and (3) the count against the Board specifically identified Joseph White as the student who was permitted upon the premises at Tilden with a weapon.

As noted above, the special duty doctrine imposes liability upon a public entity that is otherwise immune from liability due to the Tort Immunity Act. For the same reasons discussed in part I of this opinion, we hold that the plaintiff has not and cannot allege sufficient facts upon which to impose liability upon the Board. While we do not concede that the plaintiff has sufficiently alleged any of the special duty elements, we specifically find that the plaintiff has not alleged unique awareness or direct and immediate control. As to unique awareness, the plaintiff's allegations against the Board are conclusory. While they are a bit more specific than those addressed to the City, in that they allege awareness of "students bringing weapons on school premises," knowledge of a general danger is not "actual knowledge of a *particular risk* to the *particular plaintiff*" (emphasis in original) (*Thames*, 269 Ill. App. 3d at 216, 645 N.E.2d at 450). The plaintiff's complaint characterizes the Board's knowledge as a generalized knowledge of a danger or risk "to all persons lawfully on the premises" at Tilden. In *Thames v. Board of Education*, we rejected nearly identical allegations, finding that the Board's alleged knowledge that weapons were routinely brought into the schools did not establish unique awareness of the plaintiff's peril but, rather, a generalized knowledge of possible peril to all students. Here, as in *Thames*, there are no allegations that the Board knew that a particular student, Joseph White, was in possession of a gun on the premises at Tilden on the day of the shooting or that the Board knew that the decedent was specifically in danger of being shot by White.

Plaintiff's complaint also is deficient in its failure to allege direct and immediate control. As with respect to her action against the City, the plaintiff alleged that Joseph White, the decedent and all persons on the premises at Tilden were under the control of the Board. This conclusory allegation is insufficient. Moreover, the control element to the special duty exception is only alleged when the plaintiff avers that the defendant initiated the circumstances that created the dangerous situation (*Burdinie v. Village of Glendale Heights*, 139 Ill. 2d 501, 565 N.E.2d 654) or is responsible for the occurrence which gave rise to the need for protection. *Thames v. Board*

*of Education*, 269 Ill. App. 3d 210, 645 N.E.2d 445. The plaintiff here argues that the Board created a condition of danger by its nonuse of the metal detectors on the day of the shooting. We disagree. As noted above, the Board's random use of the metal detectors was a security measure undertaken to protect those present at Tilden. The Board did not create the risk of danger but instead attempted to prevent its occurrence. The Board's random use of the metal detectors created a situation where individuals could not know when the metal detectors were operational. The dangerous condition was not the Board's random usage of the metal detectors. The dangerous condition was created by Joseph White when he impermissibly entered the premises while armed. We again cite to *Thames* as follows:

> "Here the dangerous condition was not initiated by the Board or one of its employees but by [named student's] bringing a handgun to school. This act created peril not just for the minor plaintiff but for all individuals present at Orr High School on the day of the shooting. Under the alleged facts of this case, we see little difference [from] a city's immunity from liability for a failure to protect an individual, who is a member of the general public, from *** the Board's failure to protect the minor plaintiff, who is a member of the student population." 269 Ill. App. 3d at 219, 645 N.E.2d at 452.

The Board's duty to protect the decedent was no different than the Board's duty to protect all individuals lawfully on the premises at Tilden and all other schools within its jurisdiction. Thus, the Board did not owe a special duty to the decedent under the facts alleged, and that count was properly dismissed.

For the foregoing reasons, the judgments of the circuit court of Cook County are affirmed.

Affirmed.

COUSINS and HOURIHANE,[6] JJ., concur.

---

[6]Justice T. O'Brien originally sat on the panel in this appeal. Upon Justice O'Brien's retirement, Justice Hourihane substituted in the decision of this appeal. He has read the briefs and listened to the tape of oral argument.